## THE HOWARD.[1]

### GANNON v. THE HOWARD.

*(District Court, D. New Jersey.   January 5, 1887.)*

1. MARITIME LIEN—MATERIAL-MAN—HOME PORT—NEW JERSEY ACT MARCH 20, 1857.

> The lien given the material-man by state statutes will be enforced by proceedings *in rem* in admiralty, provided the transaction be based on the credit of the vessel.   No lien exists for materials furnished to the charterer in the home port of the vessel, under an agreement to accept in part payment the note of the charterer, if from the evidence it appears that the material-man was aware of the terms of the charter-party, and did not suppose or believe, at the time the work and materials were contracted for, that they were to be supplied on the credit of the boat or its owners.

2. SAME—LIEN.

> State statutes confer no lien in the home port, if from the evidence it appears that the vessel's credit was not an element of the contract.

In Admiralty.
*Edwin G. Davis,* for libelant.
*John Deady,* for respondent.

WALES, J.   This is a libel *in rem* to enforce a lien, given by a statute of New Jersey, for the recovery of the balance of the price agreed on for putting into the propeller Howard a "Multiple Effect Surface Condenser." The home port of the vessel is at Newark, in this district, and the libelant and the owners also reside in New Jersey.   The materials and work were furnished at Jersey City.   Since the decision of the supreme court of the United States in *The Lottawanna,* 21 Wall. 581, the law has been settled that a material-man may proceed *in rem,* in admiralty, for supplies furnished to a domestic vessel, when the state statute affords a lien for such supplies, provided they were furnished on the credit of the vessel.   The question here is one of fact.   To whom, or in what manner, was credit given by the libelant?   Before the condenser was ordered the Howard had been chartered to H. H. Penny, of New York, by the managing owners, and the following clause was inserted in the charter-party:

"It is also agreed that the charterers may place an approved condenser in the vessel before leaving New York, and that one-half of the actual cost thereof shall be allowed to them by the owners, payable in equal amounts, to be deducted from the third and fourth payments on account of this charter."

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

The condenser was not necessary for the use of the vessel in its general and ordinary business, but the charterer deemed one to be indispensable to the special use for which he chartered her.

The libelant is his own principal witness, and says that he furnished the condenser on the credit of the vessel, as well as on that of the charterer; but his recollection is at fault on several material points, and he is directly contradicted, in more than one instance, by the witnesses for the claimants. Capt. Rose, the master of the Howard, testifying for the owners, states that he distinctly informed the libelant that the charterer was to pay for the condenser, and that the libelant must not look to the owners or to the vessel for payment. The contract for the condenser was, in fact, made with Penny, who agreed to pay the libelant $1,000 in cash, and to give him his note at three months for the balance, with the interest included. The cost of the condenser was $2,000. Penny paid the cash, and gave his note at the time agreed on. The note was protested for non-payment at its maturity, July 18, 1885, and this libel was filed February 26, 1886. The libelant admits that he knew of the terms of the charter-party, and it is proved that he made inquiries about the pecuniary responsibility of Penny. He knew that the owners were to allow Penny a deduction of $1,000 from the charter-party money, in consideration of his putting in the condenser for his own use, and made no objection, and he admitted—if Capt. Rose is correct in his recollection—that he made a mistake in not having that money paid to himself instead of to Penny. The owners did allow to Penny the deduction stipulated for in the charter-party, and it does not appear that they at any time gave any word or sign that they held themselves liable to the libelant for any part of the cost of the condenser, in any event, nor is it pretended that any one but Penny ordered or contracted for the condenser. The only interference on the part of the owners was that they expressed, through Capt. Rose, a preference for the libelant's condenser, and prevailed on the charterer to have one of that kind placed in the vessel, if he should have any.

Capt. Rose had several interviews with the libelant, both before and after the contract with Penny, and, if his testimony be untrue, his statement of the whole transaction, and of his conversations with the libelant, is a most ingenious fabrication; but, while he is contradicted only by the libelant, he is substantially corroborated by the other witnesses. The libelant testifies that he never inquired about the financial standing of Penny, but Penny and Edwards say that he did. He further says that he never asked Penny for a reference, but the latter says that he did, and that the required reference was given. It is true that Penny refused to give an indorser or security for the note, telling the libelant that the boat was security enough. This, however, cannot avail the libelant, since it was not in the power of Penny, as a charterer, to combine with a material-man to impose a lien on the chartered vessel at her home port, which was also the residence of the owners, and against the known instructions of the latter.

As a conclusion of fact, from the evidence, the libelant did not sup-

pose or believe, at the time the condenser was contracted for, that it was to be supplied on the credit of the boat or its owners. This appears to have been an after-thought. Having in the beginning, with a knowledge of the terms of the charter-party, contracted with and given credit to the charterer, it is now too late for the libelant to charge the vessel for work and materials which were not ordered by the owners, and for which the decided weight of the evidence shows he was notified in advance they would not be responsible.

It was insisted on behalf of the libelant that as the boat had received the full benefit of the work and materials, and only half the bill had been paid, the owners are now equitably liable for the balance. But it does not follow that because the owners were willing and agreed to pay $1,000 to the charterer for putting in the condenser, that, therefore, they must also pay the libelant an equal sum for the same work. The owners paid as much as they thought the condenser was worth to them, and the amounts and terms of payment were known to the libelant before he entered into the contract with Penny. The law does not recognize the existence of a lien on such facts as have been disclosed by the testimony in this case. *The Secret*, 3 Fed. Rep. 665; *The Norman*, 6 Fed. Rep. 406; *The William Cook*, 12 Fed. Rep. 919.

Let a decree be entered dismissing the libel, with costs.