77 U.S. 204 (____)
10 Wall. 204
THE KALURAMA,
THE CUSTER.
Supreme Court of United States.

*206 Messrs. J.H. Thomas and S.T. Wallis, for the appellants.
Mr. William Shepard Bryan, contra.
*208 Mr. Justice CLIFFORD delivered an opinion of the court in each of the cases, thus:

I. IN THE KALORAMA.
Advances for repairs and supplies to the steamer named in the pleadings were made by the libellants to an amount much larger than the sum claimed in the libel, and allowed in the decree of the District Court.
Payments made before the suit was instituted were deducted from the claim as set forth in the libel, and it was ordered, adjudged, and decreed by the District Court, that there was due to the libellants at the date of the decree the sum of five thousand one hundred and thirty-two dollars and thirty-six cents as a lien upon the steamer, for which the stipulators for value were liable.
Process was duly served in the District Court, and the owner of the steamer appeared as claimant and filed an answer setting up several defences, as follows: (1.) That the repairs and supplies *209 were not necessary, as alleged in the libel. (2.) That they were not made and furnished on the credit of the steamer. (3.) That the steamer is not chargeable with the moneys advanced for the repairs and supplies described in the libel, as they were not made and furnished under a maritime contract. (4.) That the libellants brought a common law suit for the same cause of action before the libel was filed, and that the same is still pending and undecided.
None of these defences call in question the correctness of the charges in the account, and no motion was made to refer the cause to an assessor to report the amount of the expenditure, nor was any exception taken to the finding of the District Court in that behalf.
Appeal was taken by the owner and claimant of the steamer from the decree of the District Court to the Circuit Court, where the decree of the District Court was reversed.
Remarks respecting the correctness or incorrectness of the accounts exhibited in the record may well be omitted, as it is not pretended that, in view of the evidence, there can be any well-founded doubt that the advances were made as therein set forth.
Distinct issues of law are presented in the pleadings, and the District and Circuit Courts differed as widely as the parties; the former holding that the advances were a lien upon the steamer under the general rules of the maritime law. On the other hand the Circuit Court, in deference to certain expressions contained in the opinions of this court in the two cases of Thomas v. Osborn[*] and Pratt v. Reed,[] held that the advances were the mere personal debt of the owner, that they did not constitute a lien upon the steamer, and accordingly dismissed the libel, which was a libel in rem against the steamer, setting up a maritime lien. Whereupon the libellants appealed to this court, and now seek to reverse that decree.
Before examining the special defence set up by the respondent, growing out of the contract of the libellants to employ the steamer in two or more trips between Baltimore and Charleston, it becomes necessary to define with some precision what is meant by a maritime lien as affording a security for such advances, *210 and under what circumstances it arises where repairs are made or supplies are furnished to a vessel engaged in commerce and navigation.
In considering that question it will be sufficient to state that the owner of the steamer throughout that period was a resident of the city of New York, and that the port of New York was the home port of the steamer, as conceded by both parties. Proof satisfactory to both courts was introduced, showing that the steamer needed the repairs and supplies when the advances were made by the libellants, and that they were made while the steamer was lying in the port of Baltimore, where the libellants resided, to enable the steamer to continue her regular trips as contemplated by her owner; that her master had no funds which he could apply to that purpose, nor could he procure any on the credit of the owner, and that all of the advances were made at the request of the master, in the absence of the owner, or by the owner in person when he was present.
Contracts or claims for service or damage purely maritime, and touching rights and duties appertaining to commerce and navigation, are cognizable in the admiralty. Wherever a maritime lien arises in such a contract or claim, as in controversies respecting repairs made or supplies furnished to a ship, or in case of collision, the injured party may pursue his remedy, whether it be for a breach of a maritime contract or for a marine tort, by a suit in rem against the vessel, or by a suit in personam, at his election, against the owner, or against the master and owner in cases where they are jointly liable for the alleged default.[*]
By the civil law a lien upon the ship is given, without any express contract, to those who repair the vessel or furnish her with necessary supplies, whether the vessel was at her home port or abroad, when the repairs and supplies were made and furnished.[]
But the only lien which the common law recognizes in such cases, independent of statutory regulations, is the possessory lien, which arises out of, and is dependent upon, the possession of the ship, as in cases where goods are delivered to an artisan *211 or tradesman to be repaired or manufactured. Such a lien, as understood at common law, did not attach unless the ship was in the possession of the person who set up the claim, and the extent of the privilege which it conferred was that he might retain the ship in his possession until he was paid the money due him for the repairs made and the supplies furnished. Until paid he might refuse to surrender the ship, but if he relinquished the possession of the ship his lien was displaced and extinguished.[*]
In jurisdictions where the rules of the common law prevail the shipwright who works upon the ship, without taking possession of it, or if he parts with the possession before collecting what is due for his services, is not deemed to be a privileged creditor, nor is the merchant so considered who furnishes the ship with necessary supplies unless the ship is placed within his control.[]
Important alterations have recently been made in those rules of decision by acts of Parliament; but it is not necessary to pursue that inquiry, as those rules were never regarded as rules of decision in the admiralty courts of this country exercising jurisdiction under the present Constitution and the laws of Congress. On the contrary, some of the Federal courts, immediately after their organization under the Judiciary Act, decided that repairs made and supplies furnished to a ship, if made and furnished on the credit of the ship, were a lien upon the ship, whether she was at the time in her home port or in a foreign port. Other district judges were of the opinion that a maritime lien did not arise if the repairs were made and the supplies were furnished in the home port of the vessel, and some uncertainty for a time prevailed upon the subject until the same was examined by this court, when the question was put at rest.[]
Such a lien is a privilege in the thing, and is not dependent upon possession or registry, nor is it displaced, as in a contract of affreightment, when possession is relinquished, unless the circumstances are such as to show that it was waived; nor is it *212 lost by delay, unless for such a time as to show gross laches, and to afford a reasonable presumption that it was abandoned.[*]
Where repairs had been made and supplies furnished to a foreign ship, or to a ship in a port of the State to which she does not belong, the general maritime law, said Judge Story, following the civil law, gives the party a lien on the ship itself for security, and he may well maintain a suit in rem in the admiralty to enforce his right.
Many of the rules of the general maritime law are doubtless drawn from the civil law; but it is not quite correct to say that the maritime law of the United States, as laid down in that case, follows the civil law in respect to the lien conceded to the shipwright and tradesman who make repairs and furnish supplies to ships engaged in commerce and navigation, as the civil law extends that privilege to such repairers and furnishers without any such distinction between domestic and foreign vessels, as that which is constantly maintained in the decisions of this court.[]
Ports of States other than those where the vessel belongs are for that purpose considered as foreign ports, and of course the port where the steamer in this case was lying when the repairs were made and the supplies were furnished must be regarded, as between the parties in this controversy, as a foreign port.[]
Controversies respecting such liens usually arise in cases where the repairs or supplies were ordered by the master without any express directions from the owner, and in such cases the repairer or furnisher must prove affirmatively that the ship needed such repairs and supplies, as the authority of the master in such a case is implied from the necessity for the repairs or supplies, the want of funds for that purpose, the inability to procure the same, and the absence of the owner.
Where it appears that the repairs and supplies were necessary to preserve the ship in port, or to enable her to proceed on her voyage, and that they were made and furnished in good faith, the presumption is that the ship, as well as the master and owner, is responsible to those who made the necessary advances, *213 and it is clear that the necessity for credit must be presumed where it appears that the repairs and supplies were ordered by the master, and that they were necessary for the ship, unless it is shown that the master had funds or that the owner had sufficient credit, and that the repairers, furnishers, and lenders of the money knew those facts or one of them, or that such facts and circumstances were known to them as were sufficient to put them upon inquiry, and to show that if they had used due diligence they would have ascertained that the master was not authorized to obtain any such relief on the credit of the vessel.
Subject to those conditions, the master, in the absence of the owner, is vested with the authority to order necessary repairs and supplies, but it is no objection to his authority that he acted on the occasion under the express instructions of the owner, nor will the lien of those who made the repairs and furnished the supplies be defeated by the fact that his authority emanated from the owner instead of being implied by law.
When the owner is present the implied authority of the master for that purpose ceases, but if the owner gives directions to that effect the master may still order necessary repairs and supplies, and if the ship is at the time in a foreign port, or in the port of a State other than that of the State to which she belongs, those who make the advances will have a maritime lien, if they were made on the credit of the vessel.
Grant all these several propositions, still it is contended by the respondent that no such lien arises in this case because, as he insists, the repairs were made and supplies furnished in pursuance of a contract with the owner, by which the appellants assumed the entire charge of the steamer for a series of trips and were to receive the specified compensation of ten per cent. commission on the gross freights.
Doubtless some of the repairs and supplies were ordered by the owner, and the respondent contends that the appellants, by virtue of the arrangement, became the agents of the owner, and that it was in that capacity that they freighted the steamer and paid the expenses of the repairs and supplies, without any other lien upon the steamer than that given by the common law.
Strong doubts are entertained whether the written agreement, even if it had continued in force without alteration, and if the advances in question had been made under it, would support *214 the theory set up by the respondent, but it is not absolutely necessary to decide that point, as it is quite clear that the repairs were made and supplies furnished in every case either by the order of the master or the owner, and with the express understanding that they were so made and furnished on the credit of the steamer.
They employed the steamer, in the first place, under the written agreement of the fourteenth of March, 1866, for two trips between Baltimore and Charleston, and it was agreed that they were to receive ten per cent. commissions on the gross freights, and that they should disburse the steamer, but they also stipulated to have the freights and disbursements insured for the benefit of the owner, which shows to a demonstration that they were not owners for the voyage. Suggestion is made that they changed the master and selected some of the crew, but the evidence shows that all those acts were performed by the consent of the owner and subject to his approval. Much the larger portion of the advances was paid before the libel was filed, and additional payments have since been made.
Viewed, as the state of the case was, at the date of the decree entered in the District Court, it is not doubted that an amount much greater than the amount allowed in that decree had been disbursed by the libellants for repairs and supplies to the steamer subsequent to the two trips made under the written agreement. Suppose the libellants had no lien for the disbursements made under that agreement, which is not admitted, still it is fully proved that the appellants, subsequent to the two trips, refused to make further advances on the credit of the owner, and that the owner expressly requested that the advances should be made on the credit of the steamer.
Implied liens, it is said, can be created only by the master, but if it is meant by that proposition that the owner, or owners, if more than one, cannot order repairs and supplies on the credit of the vessel, the court cannot assent to the proposition, as the practice is constantly otherwise.
Undoubtedly the presence of the owner defeats the implied authority of the master, but the presence of the owner would not destroy such credit as is necessary to furnish food to the mariners and save the vessel and cargo from the perils of the seas.[*]
*215 More stringent rules apply as between one part-owner and another, but the case is free from all difficulty if all the owners are present and the advances are made at their request, or by their directions, and under an agreement, express or implied, that the same are made on the credit of the vessel. Were it not so mariners would refuse to ship for distant ports if the owner was to remain with the ship, either as supercargo or passenger, unless it was known that he had credit everywhere, as in case the ship should become disabled and need repairs and provisions the most reliable means of relief would be withdrawn, and it is not difficult to imagine a case where life and property might be lost because the owner was on board and without personal credit.
Decree of the Circuit Court REVERSED, and the cause remanded with directions to enter a decree
AFFIRMING THE DECREE OF THE DISTRICT COURT.

II. IN THE CUSTER.
Jurisdiction, it is conceded, is vested in the district courts, by the ninth section of the Judiciary Act, to enforce maritime liens by a suit in rem in all cases where such liens arise, whether the libel is for the breach of a maritime contract or to recover damages for a marine tort.
Repairs were made and supplies furnished by the appellants to the steamer named in the pleadings, and the owners of the steamer refusing to pay for the same, the appellants filed their libel in the District Court for the District of Maryland, and caused the steamer to be arrested, claiming that the repairs and the supplies were a lien upon the steamer. Appearance was entered by the owners of the steamer, as claimants of the same, and they filed an answer setting up the same defences as those pleaded by the owner of the steamer in the suit just decided. Testimony was taken by both parties in the two suits, as exhibited in the transcript of the other suit, and the parties entered into a stipulation that reference might be made in the trial of this suit to the depositions printed in the other, and that both should be heard at the same time.
Two principal questions, it seems, were discussed in the District Court. (1.) Whether the evidence showed that the credit *216 for the repairs and supplies was or was not given to the steamer, under the rules of the maritime law as understood and administered in the Federal courts. (2.) Whether the repairs made and the supplies furnished, in view of the circumstances, became a lien upon the steamer. Both of those questions were answered by the district judge in the affirmative, and the court entered a decree for the libellants in the sum of six thousand four hundred and ninety-six dollars and sixty-three cents against the owners of the steamer and the stipulators for value. Appeal was taken by the respondents to the Circuit Court, where the decree of the District Court was reversed, upon the ground that the evidence in the transcript, if tested by the rules laid down in Thomas v. Osborn,[*] and in the case of Pratt v. Reed,[] does not show the existence of any such lien.
Since that ruling was made the whole subject has been very fully reconsidered by this court in the case of The Grapeshot,[] in which the opinion was given by the Chief Justice. Viewed in the light of that decision, and of the opinion of the court in the case of The Lulu,[§] lately delivered, as the case must be, it is clear that further discussion of the same is unnecessary, as it is conclusively settled that "where proof is made of necessity for the repairs and supplies, or for funds raised to pay for the same, and of credit given to the ship, a presumption will arise, conclusive in the absence of evidence to the contrary, of necessity for credit," or, in other words, the necessity for credit must be presumed where it appears that the repairs and supplies were necessary, unless it is shown that the master had funds, or that the owner had sufficient credit, and that the person or persons making the advances knew those facts or one of them, or that such facts and circumstances were known to them as were sufficient to put them upon inquiry, and to show that if they had used due diligence in that behalf they would have ascertained that the master was not authorized to obtain any such relief on the credit of the steamer.
Suppose that defence cannot be sustained, still the respondents insist that the steamer is not liable for the advances made by the appellants, because the decree, as they contend, falls within *217 the rule laid down in the case of Minturn v. Maynard,[*] where it was held that a libel in personam could not be maintained to recover a balance of account, consisting of moneys paid, laid out, and expended for the respondents in payment for repairs and supplies to a steamer owned by the debtors, together with charges for commissions and for advertising the steamer.
Examples might easily be given where a party may sue in the admiralty or in the common law courts at his election, but it is unnecessary to express any doubts as to the correctness of the rule laid down in that case, as it is clear that it does not control the case before the court even if the rule be admitted to be correct without any qualification.[]
Undoubtedly the appellants took charge of the steamer for two trial trips between Baltimore and Charleston, and by the terms of the written agreement entered into at that time they were to receive for the services rendered in those trips a commission of ten per cent. on the gross freights of the steamer, but they also stipulated to disburse the steamer, and to insure the freights and disbursements for the benefit of the owners. They took the steamer on trial for those two trips with a view to purchase her in case they were "satisfied with the vessel," but they elected not to make the purchase, and subsequently refused to disburse the steamer on the credit of the owners. Uncontradicted as the evidence is upon this point, it does not seem necessary to reproduce it, especially as it is all one way.
Objection is also made that the advances cannot be held to be a lien upon the steamer, because some of the repairs and supplies were ordered by the owners in person, but the objection is entitled to no weight, as the evidence shows that it was expressly agreed that the advances should be furnished on the credit of the steamer.[]
Payments have been made by the respondents since the decree was entered in the District Court, but the court here is not asked to revise the finding of the District Court as to the amount, nor to deduct the payments since made, as those matters will be adjusted under the stipulations executed between the parties.
*218 Suggestion is also made that the lien was waived by the commencement of an action for the advances in the State court, but the record shows that the action is still pending, and it is well-settled law that the pendency of such an action is no bar to a suit in a Federal court.[*]
Had the judgment been rendered it might be different, but it is clear that the rule "transit in rem judicatam" cannot apply during the pendency of the action.[]
All sums collected in that proceeding have been duly credited in this case, and it is fully proved that the whole amount included in the decree of the District Court was properly cognizable in the admiralty.
Decree of the Circuit Court is REVERSED, and the cause remanded with directions to enter a decree
AFFIRMING THE DECREE OF THE DISTRICT COURT.
NOTES
[*] 19 Howard, 22.
[] 19 Id. 359.
[*] The Belfast, 7 Wallace, 642.
[] Dig. 14, 1; 1 Valin, Commentary, 363; 3 Kent, 168; Williams & Bruce, Admiralty Practice, 155.
[*] Westerdell v. Dale, 7 Term, 312; Justin v. Ballam, 4 Salkeld, 34; Watkinson v. Bernadiston, 2 Peere Williams, 367; 3 Kent, 169; Maude & Pollock on Shipping, 64; The Zodiac, 1 Haggard's Admiralty, 320; Spartali v. Benecke, 10 C.B. 228.
[] McLachlan on Shipping, 101; Doddington v. Hallet, 1 Vesey, 497.
[] The General Smith, 4 Wheaton, 443.
[*] Paragon, Ware, 322; Young Mechanic, Id. 535, second edition, S.C.; 2 Curtis, 404.
[] 2 Parsons on Shipping, 312; The Marion, 1 Story, 62; The Chusan, 2 Id. 455; St. Jago de Cuba, 9 Wheaton, 409.
[] The Grapeshot, 9 Wallace, 129.
[*] The Guy, 9 Wallace, 758.
[*] 19 Howard, 22.
[] 19 Ib. 360.
[] 9 Wallace, 137.
[§] Supra, p. 192.
[*] 17, Howard, 477.
[] The Belfast, 7 Wallace, 644; Davis v. Child, Davies, 71; The Grapeshot, 9 Wallace, 141; Merritt v. Brewer, 14 Law Rep 452.
[] The Grapeshot, 9 Wallace, 141; The Guy, 19 Id. 758; S.C. 1 Benedict, 112; The Lulu, supra, 192.
[*] Loring et al v. Marsh et al., 2 Clifford, 320; Wadleigh v. Veazie, 3 Sumner, 165; White v. Whitman, 1 Curtiss, 494; Lyman v. Brown, 2 Id. 559; The Paul Boggs, 1 Sprague, 369; The Highlander, 1 Id. 510.
[] Murray v. Lovejoy, 2 Clifford, 197; S.C. 3 Wallace, 16.