## THE SOLIS.[1]

### BRAGA v. THE SOLIS.

*(Circuit Court, E. D. New York. June 28, 1888.)*

MARITIME LIEN—SUPPLIES—COAL—NATURE OF CONTRACT.

On the 1st of June, 1883, C. Bros. & Co., coal merchants and colliery proprietors of London, who were accustomed to furnish supplies of coal to the libelant, B., a coal merchant of Montevideo, entered into a contract with a Spanish steam-ship company to furnish all the coal required by the latter at Montevideo for the use of their steamers during the remainder of the year 1883, payment to be made by master's draft. This contract C. Bros. & Co. made in their own name, but acting in the matter as agents of B., to whom the contract was sent, in the regular course of business between them and B. Thereafter B. furnished coal at Montevideo to three vessels of the steam-ship company, at the request of their respective masters, and received for the same in each case the master's draft on the steam-ship company. The company subsequently, and before the maturity of the drafts, went into bankruptcy, and B. brought this suit against one of the vessels to which he had furnished coal. A mortgagee of the vessel defended on the ground that the coal had been furnished on the credit of the owner, not the vessel. The draft was tendered on the trial to proctor for claimant. The court finding as a fact deducible from the facts of the case that B. furnished the coal to the steamship on the credit of the vessel, *held*, that libelant's claim constituted a maritime lien on the steam-ship, and that he was entitled to a decree.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. On appeal from district court.

This was an affirmance of the decree of the district court. The latter court rendered no opinion on the case. .

*Ullo, Ruebsamen & Hubbe,* for appellant.

*Wilcox, Adams & Macklin,* for appellee.

BLATCHFORD, Justice, In this case I find the following facts:

1. On the 1st day of June, 1883, Cory Bros. & Co., colliery proprietors and coal merchants, of London, England, through their agent at Barcelona, Spain, Juan M. Martinez, entered into a written contract, at said Barcelona, with Compania de Transportes Maritimos, of said Barcelona, a corporation duly organized and existing under the laws of Spain, under and by which they agreed to sell, and did sell, to the said Compania de Transportes Maritimos all the coal required by the latter at the port of Montevideo, Uruguay, during the remainder of the year 1883, for the use of all the steamers of which the said corporation were the managing owners, at the price of 43s. 6d. British sterling per ton of 20 cwt., payment to be made by the captain's draft on the said Compania de Transportes Maritimos, at 90 days' sight, payable in London. The said clause in regard to payment was, by said contract, made subject to the approval and consent of Antonio F. Braga, the libelant in this suit, who resided and carried on business at said Montevideo. Exhibit A in the record, annexed to the deposition of Richard Cory, is a copy of said contract.

2. The regular course of dealings between said Cory Bros. & Co. and said Antonio F. Braga at that time was as follows: Braga was a customer of said Cory Bros. & Co., and bought coal from them for his own account, which would be shipped by them to him, to Montevideo. They would enter into contracts to furnish coal at Montevideo to steam-ships bound there, and advise Braga of such contracts, and send them to him. Such contracts were made by them in their own name as principals, but as between themselves and Braga they were acting as agents for Braga. The customary mode of payment was by captain's draft on managing owners at 30 days' sight, payable in London, to the order of Braga. It was customary for Braga to remit such drafts to Cory Bros. & Co., who would credit their amounts to Braga in account current.

3. The before mentioned contract, Exhibit A, was mailed in the regular course of their business dealings by Cory Bros. & Co. to Braga on the 8th of June, 1883, and they advised him that, under competition, they had been obliged to make the payments at 90 days' sight, subject, however, to his approval, and that, if he objected to the concession, he had a right to nullify the contract.

4. The libelant furnished at Montevideo, on the 4th of November, 1883, 629 tons of coal to the steam-ship Tivaller, and thereupon received the draft of the master of that vessel at 90 days' sight, on Compania de Transportes Maritimos, payable in London, to the order of the libelant, for £1,379.2.9; on the 24th of November, 1883, 626 tons of coal to the steam-ship Claris, and thereupon received the draft of the master of that

vessel, at 90 days' sight, on Compania de Transportes Maritimos, payable in London, to the order of the libelant, for £1,366.13.2; and on the 31st of December, 1883; 700 tons of coal to the steam-ship Solis, and thereupon received the draft of the master of that vessel, at 90 days' sight, on Compania de Transportes Maritimos, payable in London, to the order of the libelant, for £1,541.4.5. All of the said coal was the property of Braga, and none of it was the property of Cory Bros. & Co. The coal so furnished to the steam-ship Solis was necessary for the prosecution of her business.

5. Braga indorsed and remitted said three drafts to Cory Bros. & Co. on account of his general indebtedness to them for coal shipped to him; and Cory Bros. & Co. gave Braga credit for their amounts on their books. Said drafts were presented by Cory Bros. & Co. to the said Compania de Transportes Maritimos for acceptance, and they were accepted by the latter, and made payable in London. The draft for £1,541.4.5 was accepted on February 8, 1884.

6. The steam-ship Solis, at the time of the making of said contract, and of the furnishing of said coal to her, was owned by one Pelegrin Pomes y Bordas, of Barcelona, Spain, but was, by special agreement, chartered and managed by said Compania de Transportes Maritimos, which corporation was then engaged in running a line of steamers between the river La Plata and European ports.

7. The master of the said steam-ship Solis had notice of the existence of said contract, and had instructions from the said Compania de Transportes Maritimos to obtain the necessary supply of coal at Montevideo, under said contract.

8. On his arrival at Montevideo, the said master, on his own request, made to said Braga, obtained the necessary quantity of coal from said Braga for said steam-ship Solis, and signed the said draft for the value of the coal delivered on board the said steam-ship, according to the price and the terms mentioned in said contract.

9. The invoice for the said 700 tons of coal supplied by said Braga to the steam-ship Solis was made out, and the said coal was charged, to Compania de Transportes Maritimos, and payment of the same was acknowledged by the said Braga, at the foot of the invoice, in the following words:

"Received in payment a bill drawn by Captain Luis Cairo to my order, and at 90 days' sight, on the Compania de Transportes Maritimos, of Barcelona, payable in London. ANTONIO FERNANDEZ BRAGA, per Walter Harley."

10. After the acceptance, and before the maturity, of the said three drafts, the said corporation became insolvent, and went into bankruptcy, in conformity with the laws of Spain. Regular legal proceedings were instituted in the proper court in Barcelona to wind up the corporation. In these proceedings Cory Bros. & Co. presented their claims as creditors against the said corporation for the amounts of the said three drafts, and the same were allowed in favor of said Cory Bros. & Co., as proper claims against said corporation, and as entitled to share in the proceeds of its assets.

11. At the time when the said contract was made, and at the time when the said coal was delivered to said steamship Solis, the claimant herein, the Steam-ship City of Lincoln Company, Limited, a corporation organized and existing under the laws of the United Kingdom of Great Britain and Ireland, was the mortgagee of the said steam-ship Solis, her engines, etc., by virtue of a mortgage for £16,500 British sterling, which mortgage was given to it by said Pelegrin Pomes y Bordas for part of the purchase price of said steam-ship, sold to him by said claimant; but said steam-ship was in the possession of said Compania de Transportes Maritimos with the assent of said Pelegrin Pomes y Bordas and of said claimant.

12. The said draft for £1,541.4.5 was, on the trial of this action in the district court, tendered to the proctor for the claimant, and filed in that court.

13. The facts stipulated as existing facts in the stipulation in the record dated May 11, 1888, signed by the proctors for the respective parties, are existing facts.

14. Nothing occurred in regard to the giving or taking of said draft for £1,541.4.5 in payment for said coal, except what is contained in said Exhibit A, and in said receipt at the foot of said invoice.

15. As a fact deducible from the foregoing facts, the libelant furnished said coal to said steam-ship Solis on the credit of said steam-ship.

On the foregoing facts I find the following conclusions of law:

1. The claim of the libelant constituted a maritime lien on said steamship Solis.

2. The libelant is entitled to a decree for the sum of $7,458.44, with interest from January 1, 1884, and for $62.65, his costs in the district court, as taxed, and for his costs in this court to be taxed.