### THE BERTHA M. MILLER.

### TARR et al. v. JORDAN et al.

#### (Circuit Court of Appeals, First Circuit. March 23, 1897.)

#### No. 204.

1. MARITIME LIENS—SUPPLIES—PRESUMPTION OF NECESSITY.

To create a lien for supplies ordered by the master in a foreign port, it must appear that the supplies were reasonably necessary, and that a credit to the vessel is necessary. The necessity for the supplies may be presumed from their nature, and from the fact that the master ordered them; and, in the absence of other facts, the necessity for binding the vessel may also be presumed. But if the supply man knows that the master has funds of the owners, or of his own, credit to the vessel is not authorized, and no lien is created.

2. SAME.

One furnishing a small amount of supplies to a fishing vessel in a foreign port, on the order of the master, has no lien, though he give credit on his books to the vessel and owners, when he knows that the vessel brought in and sold for cash sufficient fish to furnish means of payment. Nor is it material that the vessel departed on the day of receiving the supplies, no fraud being practiced.

Appeal from the District Court of the United States for the District of Massachusetts.

This was a libel in rem by Fritz H. Jordan and others against the schooner Bertha M. Miller (James G. Tarr and others, claimants) to enforce an alleged lien for supplies. The district court rendered a decree for libelants, and the claimants have appealed.

An opinion was filed below by Nelson, District Judge, July 16, 1896, in the following terms:

The supplies in this case were furnished to the vessel in a foreign port upon the order of the master. The evidence is sufficient to prove that the supplies were furnished upon the credit of the vessel, and that the libelants had no knowledge that the vessel was run on shares or under a charter that provided that the charterers should supply the vessel for the voyage. As the supplies were necessary for the voyage, and the prices charged were reasonable, the libelants have, by the maritime law, a lien on the vessel therefor. Decree for libelants for $114.29, with interest from September 1, 1894, and costs.

Michael J. McNeirny, for appellants.

Eugene P. Carver and Edward E. Blodgett, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

WEBB, District Judge. The schooner Bertha M. Miller, owned in Gloucester, in the state of Massachusetts, was by her owners chartered to the captain and crew for the business of "fresh fishing," in March, 1894, for the fishing season. By the terms of the charter, the captain and crew were to have sole control of the whole vessel, during the season (unless sooner the owners should terminate the charter, the right to do which was reserved), in the prosecution of the fishing business. The charterers were to provide everything necessary for the contemplated business at their own expense, and it was expressly agreed that neither the owners nor the vessel should be liable for any debts or liabilities incurred by the charterers for fishing gear, outfits, provisions, or other expenses in the prosecution of the fishing enterprise, but that for all such debts the charterers should be solely responsible. As compensation for the use of the vessel, the owners were to receive one-fifth of the gross proceeds of the fish which might be caught on said schooner, or in the prosecution of the fishing enterprise, during said time, all expenses of towing, wharfage, and weighing being first deducted from said gross proceeds. There can be no doubt that, under this charter, the charterers became owners of the schooner pro hac vice; that is, so long as the charter should continue in force. The "fresh fishing business" was prosecuted along the coast, and consisted of catching fish, which were kept fresh, by being packed in ice, until the vessel could run into some port where her fish could be sold. The trips were from one or two days to two weeks in duration, according to circumstances, depending on the distance it might be necessary to go, and the success in taking fish. While this charter remained in force, August 14, 1894, the schooner, with a fare on board, ran into the port of Portland, in the state of Maine, to make sale of her catch. While there, the captain, finding the vessel stood in need of provisions and supplies for the further prosecution of her business, ordered of the libelants what was so necessary, and the articles ordered were supplied.

That Portland was a foreign port for this schooner is not disputed. That fact gave the master power to subject the vessel to a maritime lien for necessary supplies, furnished by one having no knowledge of the particular terms on which he was sailing her. But this power of the master is not without limitation or qualification. It must appear that the supplies are reasonably necessary, and that the credit to the vessel herself is necessary. The necessity of the supplies is presumed from their nature, and from the fact that the master orders them; and, in the absence of other facts, the necessity for binding the vessel may also be presumed. But if the material man knows that the captain has funds or means of his owners, or of his own, credit to the vessel is not authorized, and no lien is created. The Lulu, 10 Wall. 192; Thomas v. Osborn, 19 How. 22; The Kolorama, 10 Wall. 204; The Patapsco, 13 Wall. 329; The Grapeshot, 9 Wall. 129. When the Bertha M. Miller, in August, 1894, sailed into Portland, she had on board the fish caught

on her trip, and they were to be sold there. Whether they belonged to the owners or to the captain and his associates, they furnished the captain with means to pay for the small quantity of supplies his vessel wanted. As matter of fact, he had bargained his fish before the supplies were ordered, and was to be paid for them in cash as soon as they were delivered. The libelants knew the business in which the schooner was engaged, and how that business was conducted. We do not mean to be understood as saying that they knew anything about the charter of the vessel. Had the schooner come in empty, after an unsuccessful fishing cruise, we have no doubt that she might have been made subject to a lien for the supplies furnished by these libelants.

Some controversy has arisen on the question whether the libelants credited the vessel or her owners for those supplies. The evidence leads to the conclusion that the libelants made the charges on their books to the schooner and owners, showing that they looked to both for payment. But the important question now is whether they had a right to charge these supplies to the vessel, and make her responsible for them. In view of all the evidence, we cannot doubt that the libelants not only knew the nature and methods of the business of the schooner, but that they also knew that she brought in for a market a fare of fish, which the captain could make use of to procure necessaries, without binding his vessel. Under such circumstances there was no right to charge those supplies to the schooner, and the form of entry on the libelants' book was of no effect.

But it is contended that, inasmuch as the vessel departed on the same day the supplies were put aboard, to pursue further her fishing business, the charge to her was warranted. The rights and obligations of the parties must be determined by the facts as they existed when the credit was given, and not by subsequent events, especially if there was no fraud practiced. In this case the master of the schooner, after receiving pay for his fish, called at the libelants' place of business, to pay for his supplies, and was postponed by the statement that the libelants had not had time to make up their bills. It was only after this that he sailed from Portland.

Had this cause depended alone upon the facts noticed in its opinion by the district court, we should unhesitatingly have affirmed its decree. But as it appears to us that, however necessary the supplies were, there was no necessity for furnishing them on the credit of the vessel, and that this was known to the libelants, the decree must be reversed. The decree of the district court is reversed, and the case is remanded to that court, with directions to dismiss the libel, with costs for the appellants in each court.