## THE MAUD PALMER.

(District Court, D. Massachusetts. March 31, 1915.)

1. MARITIME LIENS ⬾14—ADVANCES—AUTHORITY OF MASTER TO PLEDGE VESSEL.

　　That libelant had previously made advances to masters of claimant's vessels for their disbursements in port, which were repaid from freights there collected, and that such fact was known to claimant, did not imply authority on the part of the masters to pledge the vessels for such advances which entitled libelant to an implied lien on a vessel for ad-

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vances made to her master which he appropriated to his own use, on his bare statement that they were needed for her disbursements, when in fact they were not so needed and the master violated his instructions in borrowing the money.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 18; Dec. Dig. ☞14.]

2. MARITIME LIENS ☞65—PLEDGE OF CREDIT OF VESSEL—PRESUMPTION.

The credit of a vessel is presumed not to have been pledged, except when no other means were available to the master to meet her necessities.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 103; Dec. Dig. ☞65.]

In Admiralty. Suit by Henry L. Garrett against the schooner Maud Palmer. Decree for respondent.

William M. Richardson and J. R. Lazenby, both of Boston, Mass., for libelant.

Edward S. Dodge, of Boston, Mass., and Benjamin Thompson, of Portland, Me., for claimant.

MORTON, District Judge. As the libelant concedes—very properly I think—that this libel cannot be maintained under the general law as to maritime liens, no discussion of the law or statutes on that point is necessary. The lien claimed arises, if at all, either from the alleged special agreement between the libelant and the owners of the Palmer (the claimants here), or from the alleged custom of the port of Portsmouth.

Upon the latter point no evidence was introduced, except that of Mr. Garrett. His testimony amounts rather to a statement of his understanding as to the general law of maritime liens than to an assertion that there is a peculiar customary law respecting them in the port of Portsmouth. It seems clear that no such special custom, on which the lien claimed can be rested, has been established.

[1] The libelant contends that Capt. Cheney was authorized by the owners to borrow money, on the credit of the vessel, for disbursing her, to such amount as he might deem reasonably necessary for that purpose, and that, if so, the right to the lien follows. There is no evidence of any explicit authority to that effect. Such authority arises, if at all, out of previous transactions between Mr. Garrett and masters of this and other vessels belonging to the claimants. Advances had from time to time been made by the libelant to the masters for the disbursement of their vessels at Portsmouth, and had been deducted from the freight moneys. These facts were probably known to the claimants, they never objected, and they must be taken to have assented to, and impliedly authorized, such borrowings. No such advances had been procured from the libelant, however, except when, as he knew, freight money was due to the vessel. In each previous instance, he expected, as he testified, "to be repaid from the freight money" when it was collected from the consignees; and he had been so repaid. He made the advance here in question on the same understanding and expectation, and without ascertaining whether the full amount advanced

was required for disbursing the vessel. It does not appear that on any previous occasion a master had expressly undertaken to pledge the credit of the vessel for such advance, nor that the master did so in this instance, nor that the claimants ever knew of, or acquiesced in, the masters' pledging the credit of their vessels, or borrowing more than was actually necessary to disburse them.

There was no necessity for the master to borrow on this occasion. The claimants had arranged to put him in funds to disburse the vessel, and had so notified him; he acted in violation of instructions in borrowing this money. The portion of it that he actually used for the benefit of the vessel was repaid by the claimants before this suit was brought; the portion now sued for was misappropriated by the master. The home port of the vessel was Portland, Me., within easy reach of Portsmouth; her owners, who were known to the libelant, maintained an office in Portland, to which there was telephone communication from the libelant's store; they were in good financial standing, and the libelant testified that he would have loaned them $500—which would have been sufficient for the vessel's needs—on their personal liability. He made no effort to communicate with them before making the advance.

[2] Under these circumstances, I am not disposed to enlarge the implied authority of the master beyond that necessarily involved in the previous dealings. He had no general power to borrow, on credit of the claimants personally, whatever sums he chose to ask for, upon his bare statement that such sums were needed for the vessel, even though they did not appear excessive for her purposes. An agreement authorizing the master to bind the owners personally has been held not to imply authority to bind the vessel. Berwind v. Schultz (D. C.) 25 Fed. 912, 917. The credit of the vessel is presumed not to have been pledged, except when no other means were available to the master to meet her necessities. The Bertha M. Miller, 79 Fed. 365, 24 C. C. A. 641 (C. C. A. 1st Circuit); Insurance Co. v. Baring, 20 Wall. 159, 163, 22 L. Ed. 250; The Kalorama, 10 Wall. 204, 19 L. Ed. 941. There was in this case no express authority to make such a pledge; as to implied authority, in none of the previous transactions were the circumstances, so far as they have appeared, such as to create a lien on the vessel, or to warrant an inference that the master was authorized to borrow on the credit of the vessel; on the contrary, there were many facts repelling such an inference. I doubt whether the master was authorized to pledge the vessel, even for so much of the advance in question as was applied for her benefit in discharging lienable claims; and I am clearly of opinion that for so much of said advance as was not so applied no right of lien exists.

Libel dismissed.