## THE PRINCESS.

(District Court, E. D. Pennsylvania.   June 29, 1923.)

### No. 161 of 1921.

**1. Maritime liens ⬡⟶65—Evidence held to show money not advanced on credit of vessel.**

Evidence *held* insufficient to show that · money advanced to ·master was advanced on credited vessel, or to establish that funds were used to discharge valid existing maritime liens.

**2. Maritime liens ⬡⟶65—Money advanced must be shown to be used for purpose of discharging liens by competent evidence.**

While maritime liens for advances to discharge valid liens created in a home port may be sustained, yet it is essential that the existence and identity of the liens and the fact that the money was actually used for the purpose of discharging them be established by competent evidence.

In Admiralty.   Libel by the Congress Lines, Inc., against the steamship Princess.   On final hearing on pleadings and proofs.   Libel dismissed.

Howard M. Long, of Philadelphia, Pa., for plaintiff.

Joseph W. Henderson, of Philadelphia, Pa., and Rumsey & Morgan, of New York City (Mark W. Maclay, of New York City, of counsel), for claimant.

THOMPSON, District Judge.   This proceeding was by libel in rem against the Steamship Princess to recover the sum of $15,063.40 for advances alleged to have been made to the master upon the credit of the vessel.   The Princess is of American registry enrolled at the port of New York.   During the period covered by the alleged advances, namely, in October and up to November 9, 1921, Capt. Rupert Wry was the owner and master of the vessel.   On October 18, 1921, Capt. Wry chartered the vessel to the Great Gulf Steamship Corporation (hereinafter called the Great Gulf), of the city of New York, for four round trips from New York, Philadelphia, and Baltimore to Los Angeles, San Francisco, and Seattle.   On October 14, 1921, the libelant and the Great Gulf had entered into an agreement in writing whereby the libelant, which was in the business of assembling cargo for vessels as freight commission merchants, agreed to provide cargo for steamers to be operated by the Great Gulf upon a commission of 10 per cent. upon the freight booked and assembled.   All funds collected for freight were to be paid weekly to the Great Gulf by the libelant, less commission and authorized expenditures.

The libelant claims a maritime lien against the Princess, for advances amounting to $6,187.50, alleged to have been made at New York to Capt. Wry as master and owner, and for disbursements to Capt. Wry at Baltimore, and for commissions earned on westward and eastward cargo.   The Baltimore disbursements were ruled out at the trial, because of insufficient proofs, and the claim for commissions has been withdrawn, as not the subject of a maritime lien.   As to the advances at New York, the libel sets out that, the master of the steamship being without funds for the necessary use of the vessel and for equipping and supplying her, so that she would be sea-

worthy and fit for her intended voyage, the libelant, at the special instance and request of the master, advanced to him certain sums of money necessary for the purposes alleged.

At the trial, libelant offered in evidence eight checks, amounting to $6,187.50, which, it was testified, were given to Wry to pay wages of the crew, to pay for repairs, for a lifeboat, for provisions, for water for crew, and for other necessary supplies for the vessel upon her voyage. The proof in my opinion is insufficient to sustain a lien for advances against the vessel for two principal reasons:

[1] First. The checks offered in evidence on behalf of the libelant and the entries in the books of the libelant, together with the circumstances surrounding the transaction, more convincingly indicate that the advances were made upon the credit of the Great Gulf, the charterer, than upon the credit of the vessel. Each of the checks contains upon the left side of its face a notation, written by the libelant's auditor before the respective checks were signed, as follows:

No. 5002. Payable to Great Gulf Steamship Corporation. Amount: $1,500. Notation: "Advance a/c charter party with Capt. Rup. Wry and G. G. S. S. Corp., dated Oct. 18, 1921."

No. 5007. Payable to cash. Amount: $1,000. Notation: "Advance to Gr. G. S. S. Corp."

No. 5008. Payable to J. J. Cassidy (an officer of the Great Gulf). Amount: $100. Notation: "Advance a/c Gr. G. S. S. Cor."

No. 5009. Payable to J. J. Cassidy. Amount: $100. Notation: "Advance a/c Gr. G. S. S. Cor."

No. 5010. Payable to Capt. Rupert Wry. Amount: $600. Notation: "Advance a/c Great Gulf S. S. Co."

No. 5020. Payable to Capt. Rupert Wry. Amount: $200. Notation: "Advance a/c Freight for Great Gulf S. S. Corp."

No. 5030. Payable to Capt. Rupert Wry. Amount: $1,687.50. Notation: "Advance to owner S. S. Princess a/c Great Gulf S. S. Corporation account freight money."

No. 5031. Payable to Capt. Rupert Wry. Amount: $1,000. Notation: "Advance to owner S. S. Princess a/c Great Gulf S. S. Corporation account freight money."

There was offered in evidence with each of the respective checks a receipt for the amount thereof, each containing, above the signature "Rupert Wry, Master and Owner," the words "Advance to master and owner S. S. Princess." It was testified that the libelant always demanded such a receipt, but it is not satisfactorily explained why the notations on the checks were not made to correspond to the apparent intent of the receipts.

In the libelant's cash book, under the head of "Cash disbursements," the checks are entered, with the date and the name of the payee in separate columns and the amount in another column, headed "Great Gulf Steamship Corporation," with the words "S. S. Princess" written above in red ink. In the ledger the aggregate charged against the Great Gulf, with the words "S. S. Princess" written in red ink above, includes the total amount of the checks.

While the witnesses, two of whom were interested as officers of the libelant and one was its former auditor, testified to the effect that the checks were all delivered to, and received by, Capt. Wry, upon his statements that the advances were upon a hypothecation of the

vessel, and their purpose was to pay for necessary supplies and repairs and wages of the crew, the contemporaneous declarations in writing are too strongly persuasive to the contrary to be overcome by the oral testimony. As to the notations on the checks, if they are to be taken as meaning what they say, the advancements were all made on account of the Great Gulf, and some of them are expressed to be for advances of freight money. While Mr. Williams testified that the notations were made without his authority, yet Mr. Uhlig, the auditor, who drew the checks testified as follows:

"Q. After you drew those checks, did you deliver them to Mr. Simon, or Mr. Williams, or Capt. Wry, or who?" A. After I drew them, I always gave them to Mr. Simon for signature."

It therefore appears that Mr. Simon, who was president of the libelant corporation, had the notation indicating that the advances were made to the Great Gulf before him at the time he signed the checks. The surrounding circumstances add to the strength of the conclusion that the advances were to the charterer, and not to the master. The freight agency contract was the subject of a running account between the libelant and the charterer, and the advances were, no doubt, made upon the credit of the freight moneys received and to be received by the libelant as booking agent for the Great Gulf.

[2] Second. There is insufficient evidence to establish that the funds advanced were used to discharge valid existing maritime liens. While it was testified that Wry exhibited receipts to the libelant's officers, there is no sufficient identification of lien claims claimed to have been paid, either as to lien claimant, character of lien, or amount thereof, to which each advance was applied.

While a maritime lien for advances to discharge valid liens created in a home port may be sustained, yet it is essential that the existence and identity of the liens and fact that the money was actually used for the purpose of discharging them be established by competent evidence. The City of Camden (D. C.) 147 Fed. 847; The Puritan (D. C.) 258 Fed. 271; The Wyoming (D. C.) 36 Fed. 493; The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; Nippert v. The Williams (D. C.) 42 Fed. 533; The Guiding Star (C. C.) 18 Fed. 263; The Maud Palmer (D. C.) 224 Fed. 654; Merritt v. Brewer, Fed. Cas. No. 9483.

According to the testimony of the libelant's witnesses, the negotiations were all had with Capt. Wry, and yet one whose testimony would have been so important was neither called as a witness, nor his deposition taken, nor the absence of his testimony explained. For want of convincing proof, and in view of documentary proof so strongly contradictory to the oral testimony, the libelant's case has not been sustained.

Libel dismissed, with costs, to be taxed by the clerk.