## THE KOCHALINE.
## THE ELLIOTT.

District Court, E. D. South Carolina. March 21, 1928.

Nos. 783, 784.

**1. Admiralty ⬤═39—Claimant, not demanding trial or serving notice of trial, held not entitled to dismissal of libel for want of prosecution.**

Claimant, who never demanded trial or gave libelants notice of trial, *held* not entitled to dismissal for want of prosecution because of undue delay in bringing case to trial and resulting inconvenience.

**2. Maritime liens ⬤═43—Lien for repair of vessel held not waived by acceptance of notes of third party, afterward surrendered for amount due.**

Acceptance by libelants of notes of a third party for the amount due them for repairs made to a vessel *held*, under the evidence, not a pay-

ment, and receipt of partial payments on, and renewal of, the notes, which were later surrendered, *held* not a waiver of the right to a lien for the work done.

**3. Maritime liens ⬤═5—To sustain claim to lien for supplies furnished crew of vessel laid up for repairs in home port, it must be shown that crew remained on board.**

To sustain claim to a maritime lien for supplies furnished for the crew of a vessel while she was laid up for repairs in her home port, it must be shown that the crew remained on board, and that there was necessity for their doing so.

In Admiralty. Suits by Frank W. Lachicotte and St. Julian M. Lachicotte, partners as P. R. Lachicotte & Sons, and by T. W. Brightman, against the steamer Kochaline (formerly known as the steamer Farmer) and the barge Elliott (formerly known as the steamer Elliott). Decrees for libelants.

Walter Hazard, of Georgetown, S. C., for libelants.

Nathans & Williams, of Charleston, S. C., for respondents.

HALE, District Judge. These libels against the steamer Kochaline are brought to enforce maritime liens for materials and supplies furnished to the steamer in her home port. The provision of the Act of Congress of June 23, 1910, 36 Stat. L. 604, 9 Fed. Stat. Ann. 346 (Comp. St. §§ 7783–7787), gives a lien on domestic vessels for repairs, etc., and supersedes the state statutes on the subject. The provisions of this act are as follows:

"That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

[1] The libels were filed in August, 1918. The claimant has now filed a motion to dismiss these libels on the ground of unreasonable delay in their prosecution. Admiralty rule 156, of this district, reads as follows:

"When all the pleadings in a cause of admiralty and maritime jurisdiction shall have been filed and the cause shall be at issue, the clerk shall enter it on the docket for trial. Thereupon, without more, the cause will be deemed for trial at the expiration of four (4) days thereafter. If, for any reason, the trial be not begun at that time, any party

to the cause may call it up for trial by giving one day's notice to the other parties or their attorneys, whereupon the trial may proceed forthwith, unless the court or judge shall order otherwise. By consent of parties, the delay of four (4) days after the cause is at issue may be dispensed with."

The claimant has filed an affidavit setting forth the hardships which he has suffered by reason of the delay in the prosecution of the case; that his client has now left the jurisdiction, and he is unable to find him; that he is left entirely unprotected; and that the claimant's rights are therefore imperiled. He also urges that, if the libelants should have judgments on their claims and the surety company furnishing the bonds should be obliged to pay the judgments, it would be deprived of the opportunity to protect itself. The libelants have also furnished an affidavit, reciting the history of the case.

The question of unreasonable delay must be determined by the facts in each case. It is a question addressed to the judicial discretion of the court. Under the rule, either party to an admiralty cause has the right, upon one day's notice, to call it up for trial, after the expiration of four days from the entry on the trial docket. The record does not show affirmatively that the claimant has ever appeared in court and demanded trial, or given to the libelants notice of trial. In reference to the equities of the surety company in this matter, it must be said that the surety company is not a party to the suit, and can have no equity superior to that of the libelants. After a careful study of the affidavits in the case and of the record, I am of the opinion that, even though the claimant suffers some hardships, the court, in its discretion, cannot order the libels to be dismissed in the cases for want of prosecution. The Mariel (D. C.) 6 F. 831; Benedict on Admiralty (4th Ed.) p. 259. The motion to dismiss the libels is denied.

[2] The claim of Lachicotte & Sons is for labor and materials furnished for the repair of the steamer Kochaline. The claim of T. W. Brightman is for engines and machinery furnished for the repair of the Kochaline. The defense is that the repairs and materials furnished by the two libelants were paid for by the notes of a third party, the Carolina Veneer Company.

The record shows that the libelants took notes, and from time to time accepted partial payments on account of the original notes and renewals for balances on the bills; and the learned proctor for the claimant contends that the acceptance of the notes of Carolina Veneer Company by the libelants, P. R. Lachicotte & Sons and T. W. Brightman, given by the claimant, J. E. Kocha, operated as a waiver of the maritime lien attaching for the protection of the claims of these libelants, and, further, that, even if the original notes did not constitute payment of the claims and did not have the effect of waiving the liens, yet, by accepting partial payments from time to time and renewals for the balances due, the libelants waived their liens. It appears also from the record that the notes have been surrendered.

Upon a careful study of the record in the instant case, I find that the question is not free from difficulties. It is in some respects a close question, upon the testimony, whether there is sufficient evidence to meet the presumption of payment of prior indebtedness by the creditors' acceptance of the notes; but, upon the whole, I am of the opinion, upon the testimony, that the libelants did not lose their liens; and I think the surrender of the renewal notes remaining unpaid is a substantial and sufficient compliance with the rule of the Supreme Court of the United States that, where notes are surrendered, the libelant has the right to enforce his original maritime lien. I am constrained to find, then, that the notes were not taken in payment of the debts, and that the fact that the notes were subsequently renewed from time to time for unpaid balances does not operate to alter the nature of the original transaction. I find, then, that the libelants have valid maritime liens for their respective claims; that there was no waiver of the liens of the libelants; Lachicotte & Sons and T. W. Brightman. The Chelmsford (D. C.) 34 F. 399; The Solis (C. C.) 35 F. 545; The Active, Olcott, 286, Fed. Cas. No. 34; The Nestor, 1 Sumn. 73, Fed. Cas. No. 10126; The Fairhope (D. C.) 235 F. 1007; The Gurnet (D. C.) 235 F. 595; The Yankton (D. C.) 7 F.(2d) 384; Olympia Shipping Corp. v. Dry Dock (C. C. A.) 275 F. 199.

[3] The record shows the intervention of Charles R. Ford for supplies furnished by him for the maintenance of the crew on the steamer Kochaline while she was on the ways at Waverly Mills undergoing repairs.

Ford, the intervener, testified:

"Q. Did you have any agreement or contract with Capt. Chitwood for furnishing supplies? A. No, sir; he bought them for himself on open orders.

"Q. For what steamer were these orders? A. By Capt. Chitwood for the steamer Farmer."

He further testified that the original bill was $194.05, on which $100 was paid; that,

in an interview with Mr. Kocha at Georgetown two or three months before the libel was filed, Mr. Kocha told him he would see that he got the money. He further said that the bills were sent to the Carolina Veneer Company and to Mr. J. E. Kocha, president.

On recross-examination, the witness Beaty, bookkeeper for Ford, testified that the boat was being repaired at Waverly Mills, and that he did not know whether the crew was living on it or not.

The learned counsel for Ford contends that these supplies were "necessaries" within the meaning of the maritime law, and that the term "necessary" does not mean indispensable to the safety of the vessel and crew, but that "necessaries" which will create a lien upon the ship are such as are reasonably fit and proper for her under the circumstances; that whatever a prudent owner, if present, would be supposed to authorize, the master may order, and the ship will be held responsible; that a necessity for credit will be presumed where it appears that the repairs and supplies were necessary for the ship, and that they were ordered by the master, citing The Fortitude, 3 Sumn. 228, Fed. Cas. No. 4953; The Kalorama, 10 Wall. 204, 19 L. Ed. 941; The Bellevue, 47 F. 86, The Grapeshot, 9 Wall. 141, 19 L. Ed. 651; The Valencia, 165 U. S. 264, 17 S. Ct. 323, 41 L. Ed. 710.

In the instant case, in order to substantiate Ford's claim, I think it is necessary to show affirmatively that the crew were on the boat engaged in work upon the boat, or that it was necessary for the protection of the boat that the crew should be still retained, or that it was necessary for the crew to be retained because it would have been impossible to have obtained another crew for a prospective voyage of the ship. These facts are not affirmatively proved. The ship was in the home port. Apparently it was in charge of a contractor for repairs. Upon the whole, I am constrained to find, from all the testimony, that it is not shown affirmatively that there was any necessity for the crew to be aboard the ship while she was being repaired in her home port. The libel as to Ford must be dismissed, with costs to the claimant.

Under all the circumstances of the case, I do not allow an attorney's fee, as claimed in the Lachicotte Case. Nor do I allow costs for the libelants except the ordinary proctor's fee in the Lachicotte and Brightman libels.

Let decrees be presented consistent with this opinion.