THE ST. JOHN.

CONERY et al. v. DELAHOUSSAYE et al.[1]

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

No. 423.

MARITIME LIENS—SUPPLIES FURNISHED BY VESSEL'S AGENTS.

A firm made large cash advances on mortgage account to the captain of a steamboat whose home port was in another state, to pay off debts owing to third persons. This was done, as stated by one of the firm, for the purpose of "getting his business." Thereafter the firm acted for several years as the exclusive financial agent of the steamboat, collecting her bills, making advances to the captain from time to time to pay his crew, and for coal bills, commissions, insurance, interest, etc., and also furnishing supplies. *Held*, that the agency was of such a character as to preclude the idea that the supplies were furnished on the credit of the vessel, so as to create a maritime lien, although the firm may have thought that she was bound.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

W. W. Howe, for appellants.

John D. Grace and Frank E. Rainold, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. The libelants, L. P. Delahoussaye, Jr., bill clerk, and George Johnson, steward, of the defendant steamboat, filed their suit for wages, amounting to $94, in the district court for the Eastern district of Louisiana. Under the libel, process was issued, and the boat was seized. No claimant appearing, she was sold for $2,200, and the proceeds placed in the registry. A number of interveners, claiming for wages, supplies, etc., appeared in the suit. There is no dispute that the steamer St. John was a foreign vessel, having been enrolled and licensed in the state of Mississippi, and the domiciles of her owners and masters were in that state. The matters in the suit were referred to a commissioner, to take evidence, and report thereon; and all the claims favorably passed on by the commissioner were allowed without objection. Among those interveners are the appellants, E. Conery & Son, who intervened for a supply bill against the steamer for $769.42. All the supply claims prosecuted by the interveners were allowed except appellants' claim, which was rejected by the commissioner in his findings and report; and, appellants having excepted to such findings, the court below sustained the commissioner's rulings on E. Conery & Son's claim, for "the reason that E. Conery & Son, interveners and exceptors, were the agents of the steamboat St. John; and the presumption of law is that, as such agents, the advances or supplies they made were on the personal credit of the owners of the steamboat, which pre-

[1] Rehearing denied April 21, 1896.

sumption has not been overcome, but, on the contrary, has been sustained by the evidence."

The appellants, among their several assignments of error, present the following:

"(8) The evidence shows that E. Conery & Sons were not the husband of defendant steamer, or general agents in any such manner, extent, or method as impaired their just lien, and the court below erred in holding otherwise."

In addition to the assignment quoted above, appellants complain of the district court's erroneous rulings on other issues passed on by the court adversely to them. Under the view we have of the rulings of the court below, it is not necessary that any of the assignments except the one quoted should be considered. That assignment puts at issue the facts and law upon which the district court decided adversely to the appellants. The evidence clearly shows that E. Conery & Son, when and during the time the supply bill was incurred by appellees, were the agents of the defendant steamboat. The appellants contend that their agency, as shown by the evidence, was of a limited kind, and that the facts showing them to be agents did not, under the law applicable thereto, warrant the judge a quo in depriving them of a lien in con curso with the other claimants for supplies against the defendant steamer. There seems to be but little, if any, disputed evidence on the issues of fact which show the acts, transactions, etc., of the appellants for and with the defendant steamer herself, as well as with the captain or master thereof, during their various and complicated business relations. Appellants' books show several separate accounts against the steamer St. John. One of them shows a mortgage account, the first item therein being for $5,631, which was advanced, as cash, to Capt. Delahoussaye, to pay off his indebtedness to a firm in this city with which he had been previously dealing. It was advanced to him "for the purpose of getting the business of Captain Delahoussaye," as was said by one of appellants' witnesses. The "mortgage account" shows items for cash advances to pay insurance, interest, etc., amounting to $8,097, with credits of cash,—one for $1,300, collected as dividends on Capt. Delahoussaye's interest in the steamer Lafourche; and another cash credit collected for Delahoussaye, as the dividend on 10 shares in the steamer Josie W., $400. The transcript shows much testimony concerning the mortgage account which we will not further consider, except to say that our deductions from it are not favorable to the appellants' contention as to "the manner, extent, or method," etc., of their agency, or as to their right to a maritime lien, for their supply bill, against defendant steamer. The last credits on the mortgage account were made in January and May, 1895. Another account, called "cash or running account," shows charges against said steamer beginning in October, 1893, and running until February 13, 1895. It contains charges for cash advanced to the steamer's captain, and for payments made to various persons, for sundry purposes. Among them seem to be charges for commissions, for insurance, interest, etc., and for payments of drafts, and on deductions, etc. Said account amounts to about

$40,000, and shows credit by cash collections beginning October 13, 1893, and continuing from day to day, and from time to time, until the account, on February 13, 1895, shows a balance of $43.78 against the steamer. It appears that appellants, during the time of their agency, from time to time, furnished supplies to the boat, and that their accounts therefor, except the one now sued on, beginning October, 1894, and ending January, 1895, seem to have been satisfactorily arranged between the parties.

Much, if not all, the evidence, besides the exhibits showing the several said accounts, which relates directly to the manner, extent, or method of appellants' agency, is shown in the testimony of E. Conery, Jr., a member of the commercial firm, whose intervention we are now considering. In the evidence appear the following questions, the answers to which were made by E. Conery, Jr.:

Q. From October 27, 1891, down to the time the last entry was made in your books in relation to the steamer St. John, who were the general agents of the steamboat St. John? A. You mean fiscal agents or freight agents? Q. Both. A. [page 96:] I don't know who were the freight agents. Q. Who were the fiscal agents? A. We were. Q. E. Conery & Son? A. Yes, sir; sometimes she would have freight agents with one, and sometimes with another; I never kept run of that. Q. Freight agents are those who solicit freight? A. Yes, sir. Q. The other business outside of soliciting of freight was done by your house? A. Yes, sir; entirely. [At pages 112–113:] Q. What was the regular channel? A. As agents. Q. Who were the agents? A. E. Conery & Son. Q. For what? A. The steamboat St. John. * * * Q. Then am I to understand from your testimony that from October 27, 1891, down to the date that the credit was given on the back of this note, January 22, 1895, that your house, E. Conery & Son, were the agents of the steamboat St. John? A. Yes, sir. Q. They attended to all of her business, except the soliciting of freight? A. All of her business except the soliciting of freight. Q. Made her collections and disbursements? A. Made her collections, of course;. never made her disbursements except when called upon. [At page 98:] Q. Now, this cash account that you speak of, and in reference to the steamboat St. John, alone, were the charges against the steamboat St. John in that cash account, for advances made by your house of cash? A. Yes, sir. Q. That cash was advanced for the purpose of what? A. For paying her crew, coal bills,—that is, in the shape of drafts you know,—and charges. Q. What kind of charges? A. Such as you get; say, warehouse charges. on sugar freight; boat charges. Q. In other words, where a consignor would deliver a certain quantity of goods to the boat, and would present a bill for charges against these goods for drayage, warehouse, etc., the money would be used for the purpose of paying those charges? A. That is what we presumed Captain Delahoussaye used it for.

In addition to this extract from his testimony, he says at another place that the credit for the supplies now in question was given to the steamboat. In considering the effect of the evidence quoted above, together with evidence on the same subject, we think that his statement that the credit was given to the steamboat St. John shows only an affirmation of his conclusions of law. Declarations made elsewhere as to the extent of appellants' agency also suggest his view of the law applicable to the facts which he has stated. We do not think his conclusions of law are sustained by his narrative of the facts relating to the manner, extent, or method, etc., of the appellants' agency. We think the evidence, shown in the said several accounts, taken together with appellants' relation,

to the defendant steamer, and to the captain thereof, beginning, as they did, with the first advancement of cash, for the purpose of getting Capt. Delahoussaye's business, and running through several years, ending, as it appears, only on the day the steamer was libeled, were of such a character, whatever appellants themselves may have thought of the extent or method of their agency, as to forbid us to conclude that the credit of the defendant steamer was such an element in their sale of supplies to the boat as would impose a maritime lien in their favor, to the prejudice of the other interveners. The Kingston, 23 Fed. 200; The Lulu, 10 Wall. 192; The Howard, 29 Fed. 604; Berwind v. Schultz, 25 Fed. 912.

Under the evidence and the law applicable thereto, we think the court a qua could not have concluded otherwise than it did, and the judgment is affirmed.