## THE SOUTH PORTLAND.

### McCALDIN v. M. SELLER & CO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

No. 550.

MARITIME LIENS—EQUIPMENT.

Under 2 Ballinger's Ann. Codes & St. Wash. § 5953, which gives a lien on a vessel for equipment furnished in that state at the request of her owner, master, or agent, and provides that every person "having charge in whole or in part of the * * * equipment of any vessel shall be held to be the agent of the owner," one who furnished necessary equipment for a steamer at the request of the agent of a corporation claiming to be a part owner, and which was in possession under a contract for her operation on joint account, by the terms of which the corporation was to become the owner when the owner's share of the earnings reached a specified sum, is entitled to a lien therefor, which may be enforced in admiralty, where it was expressly agreed that credit was given to the vessel.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Libel by M. Seller & Co., a corporation.

Metcalfe & Jurey, for appellant.

Harold Preston, E. M. Carr, and L. C. Gilman, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The appellee, a corporation doing business at Seattle, Wash., libeled the steamship South Portland on account of material furnished at Seattle for her equipment, amounting to $1,940.55, and for loss of certain merchandise shipped by the appellee on said steamship on her voyage from New York to Seattle, amounting to $79.20. On December 23, 1897, the steamship was owned by W. H. Walsh, and James McCaldin was the manager for the owner. She was registered at the port of New York, and remains so registered. On that date McCaldin, as manager, entered into a written agreement with the Boston & Alaska Transportation Company, a corporation created under the laws of the state of Maine, whereby he agreed to sell the ship to said corporation upon terms and conditions which are substantially as follows: First. The owners agreed at their own expense to change and make such alterations and additions to the ship as to increase her passenger accommodation, which was then 50, to not less than 200, and to man and store the ship with all the stores and supplies necessary for her voyage from New York to Seattle. Second. The corporation was given the right to ship on the voyage from New York to Seattle all freight which it might desire to ship. Third. Upon delivery of the ship at Seattle to the corporation, the latter was to take charge of "and pay all expenses of running the same, not including damages for accidents, or expenses other than those necessary to keep the vessel in proper repair, and thereafter the said steamship shall be sailed or run on the joint account of both par-

ties in the business of transporting freight and passengers between Seattle and Alaskan ports"; one-third of the gross receipts of said business to be paid to the owners on account of the purchase money of the steamship; the other two-thirds to belong to the corporation. Fourth. That all business, after delivery, should be transacted exclusively by the corporation; all earnings to be received and disbursed by it. Fifth. When the gross payments made by the corporation to the owner should amount to $75,000, the vessel was to be transferred to the corporation, but, upon its failure to pay the purchase price before a day named, the contract should be terminated, and the interest of the corporation forfeited; and until transfer of title the owners should keep the vessel in good order and repair, the reasonable wear and tear thereof excepted. After the arrival of the ship at Seattle, the alterations having been made so as to increase her passenger accommodations as agreed upon, the Boston & Alaska Company proceeded to furnish her with the additional equipment thereby made necessary. Its purchasing agent, together with the ship's purser, solicited the appellee to furnish such equipment, and the former informed the appellee that the Boston & Alaska Company were part owners of the ship, and were the ship's agents. The appellee offered to furnish the desired equipment, but only upon the credit of the ship. This was agreed upon, and it was further stipulated beween the appellee and the corporation's treasurer that credit of 60 days should be given on the bill. Thereupon the purser selected at the appellee's stores the articles of equipment which were required, except certain items, such as table linen, bedding, carpets, and curtains, which the appellee did not carry in stock, but purchased and paid for at other stores, charging all the items to the ship on its bill. It was proven that all the articles so furnished by the appellee were necessary to the equipment of the ship in accordance with its increased passenger accommodation. The vessel thereafter sailed from the port of Seattle to St. Michaels, Alaska, at which place a portion of the goods so furnished by the appellee were taken from the ship, and used in equipping some Yukon river boats which the Boston & Alaska Company owned. But it was shown that in so using the same they were diverted from the purpose for which they were originally obtained, and that all the goods were necessary in the first instance to the proper equipment of the ship. A decree was rendered by the district court in favor of the appellee for the full amount of its demand and interest, less the sum of $142.90, on account of unpaid charges for the transportation of the appellee's merchandise from New York to Seattle.

Upon the appeal to this court it is contended that the Boston & Alaska Company had no authority to impose a lien upon the steamship for her equipment, and that the appellee had notice, sufficient to put it upon inquiry, of that fact. It is urged that the Boston & Alaska Company, although it was in possession of the vessel under a contract of purchase, stood in substantially the attitude of a charterer whose charter party required him at his own cost to provide for necessary supplies and repairs; that none of

the equipment of the steamship was procured at the instance of the master, or with his knowledge, so far as the record shows; that one who furnishes such equipment at the instance of a person or corporation who has acquired the control and possession of a vessel under such circumstances cannot acquire a maritime lien, if he fail to make inquiry as to the terms and conditions upon which such possession and control have been obtained, and the rights of the respective contracting parties; and that he is not authorized to assume, and proceed upon the belief, that the vessel will be liable for his claim. Authorities are cited to support that contention, particularly the cases of The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, and The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710. But it is unnecessary to determine whether the appellee acquired a lien under the general principles of maritime law. A statute of Washington which was in force at the time when the equipment was furnished to the steamship provides as follows:

"All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable (1) for services rendered on board at the request of or on contract with their respective owners, masters, agents, or consignees; (2) for supplies furnished in this state for their use, at the request of their respective owners, masters, agents, or consignees; (3) for work done or material furnished in this state, for their construction, repair, or equipment, at the request of their respective owners, masters, agents, consignees, contractors, sub-contractors, or other person or persons having charge in whole or in part of their construction, alteration, repair, or equipment; and every contractor, sub-contractor, builder, or person having charge, either in whole or in part, of the construction, alteration, repair, or equipment of any vessel shall be held to be the agent of the owner, for the purposes of this chapter." 2 Ballinger's Ann. Codes & St. § 5953.

This statute had been amended for the purpose of curing what was considered a defect in a former statute enacted by the territorial legislature of Washington, under which it had been held, in the case of The Daisy, 2 Wash. T. 76, 3 Pac. 616, that no lien was given for machinery put into a steamer at the request of the contractor. It is not denied that the statute so amended must be construed in the light of the general principles of the admiralty law, and that it cannot have the effect to create a maritime lien enforceable in the admiralty unless there be read into it the condition that credit shall have been given to the vessel. In The Lottawanna, 21 Wall. 581, 22 L. Ed. 654, Mr. Justice Bradley, speaking for the court, said of the restoration of the twelfth admiralty rule of 1844:

"We have made it general in its terms, giving to material men in all cases their option to proceed either in rem or in personam. Of course, this modification of the rule cannot avail where no lien exists; but, where one does exist, no matter by what law, it removes all obstacles to a proceeding in rem, if credit is given to the vessel."

In the last sentence is expressed the essential prerequisite of such a lien, and of its enforcement in the admiralty. Credit must have been given to the vessel.

In The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, the court had under consideration the statute of New York which gave

a lien on a vessel for a debt contracted by the master, owner, charterer, builder, or consignee on account of work done or materials furnished for the building, repairing, fitting, furnishing, or equipping of vessels. Coal had been furnished to a foreign vessel in a port of that state at the instance of the charterer, who was bound by his charter party to pay the expense of all such supplies. It was held that under the evidence developed in the case the libelant was chargeable with knowledge of this provision of the charter party, and he was accordingly denied a lien, but the court proceeded to say:

"If coal had been furnished upon the order of the charterer as well as upon the credit of the vessel, under circumstances which did not charge libelant with knowledge of the terms of the charter party, but charged it only with knowledge of the fact that the vessel was being operated under a charter party, a different question would be presented."

The present case presents the "different question" to which the court thus referred. The corporation in possession of the vessel was not a charterer, merely. It was, in a sense, the owner. It represented itself to be one of the owners when it applied to the appellee for the equipment for the vessel. But it is immaterial whether we regard the Boston & Alaska Company as the charterer in possession or as an owner of the vessel. In either aspect it would have had the power under the statute to bind the vessel with the lien. So far as the record shows, the appellee not only had no notice of the rights of the appellant under the contract, but no fact came to its knowledge which was sufficient to put it upon inquiry. It is clear that it accepted as conclusive the facts as they were represented to it. It stipulated that its goods should be sold only upon the credit of the vessel, and this was assented to. The goods were so sold, and the vessel was pledged, within the common intent of both parties. The vessel was in a foreign port. The credit was not obtained by the master, it is true; but it was obtained by one who, under the provision of the statute of Washington, had the same authority to subject the vessel to a lien that the master would have had. We are of the opinion that the appellee acquired a lien which was enforceable in the district court. The decree will be affirmed.