ALASKA & P. S. S. CO. et al. v. C. W. CHAMBERLAIN & CO.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1902.)

No. 750.

1. SHIPPING—HOME PORT—CHARTER PARTY—SUPPLIES.
   Where the charterer of a vessel is a corporation, the place of its principal place of business is the home port of the vessel as to all claims for supplies furnished by persons with notice of the charter party.

2. SAME—MARITIME LIEN.
   Where supplies are furnished a vessel in her home port, no maritime lien exists therefor.

3. SAME—STATUTORY LIEN.
   Where a charter party provided that it was a demise of the vessel for a certain term, and that the charterer should hold the owner free from liens, such charterer had sufficient interest in the vessel to subject it to a statutory lien for supplies.

4. SAME—PRESUMPTION.
   Where supplies are furnished to a charterer having a demise of a vessel for a certain term at the place of the charterer's residence, it will be presumed that credit was given to the charterer, and not to the vessel, which presumption may be rebutted only by proof that it was the intention of both parties that credit should be given to the vessel.

5. SAME—EVIDENCE.
   Where supplies are furnished to the owner of a vessel at the home port, evidence that the vendor understood that he was furnishing the supplies

¶ 2. See Maritime Liens, vol. 34, Cent. Dig. § 7.

on the credit of the vessel, and so entered them on his books of account. is insufficient to rebut the presumption that supplies so furnished are furnished on the credit of the purchaser only

**6. SAME.**
Evidence *held* insufficient to show an intention on the part of both buyer and seller of supplies furnished for use of the steamship that the supplies were to be furnished on the credit of the vessel, and not on the credit of the purchaser.

**7. SAME—LIEN—FORECLOSURE—RIGHT TO INTERPOSE DEFENSE.**
A charterer, being bound by the charter party to protect the ship from liens, was entitled to interpose the defense to an action to foreclose an alleged statutory lien for supplies furnished that the supplies were furnished on the credit of the purchaser, and not on the credit of the ship.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

On December 6, 1899, the Alaska & Pacific Steamship Company, a corporation created under the laws of the state of Washington, and having its principal place of business at the city of Seattle, chartered the steamship Robert Dollar from the owner thereof, who resided at San Francisco, Cal., for the transportation of freight and passengers between the city of Seattle and Cape Nome, Alaska, for a term of six months after the delivery of the vessel, which was to be between May 1 and 10, 1900. The charter party contained the following provisions: "Second. This agreement is understood to be a demise of said ship by said party of the first part to said party of the second part during the term of this charter party, and said party of the second part shall have the sole use and disposal of the whole of said vessel, and shall have the privilege of lading on board thereof, at its own proper cost and expense, such lawful cargo and passengers as it may deem fit." By the third section it was stipulated that the charterer should "pay for all wages, fuel, supplies, wharfages, pilotages, and all other charges of whatever nature" during the term of the charter party, and that the owner "shall be put to no cost or expense in regard to said vessel during the said term"; and in the seventeenth section it was stipulated that at the termination of the charter party the steamer should be delivered up to the owner free from all liens and claims of every nature and description created during the term of the charter party, and the charterer agreed to hold the owner harmless from all liens and claims against the vessel or the owner arising or created during the term of the charter party, "except a claim for salvage services rendered to said vessel." C. W. Chamberlain & Co., a corporation, the appellee herein, libeled the vessel for $399.90 on account of supplies furnished and delivered on board in the months of July and August, 1900. The charterer intervened for its interest, and as claimant of the steamship answered, denying that the appellee had a lien upon the vessel. Upon the issues formed and the testimony taken the district court sustained the libel, and rendered a decree in favor of the appellee, holding the vessel subject to a lien for the supplies so furnished.

Struve, Allen, Hughes & McMicken and Hoyt & Haight, for appellants.

Bausman & Kelleher, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It appears from the record that the appellee, upon the order of the Alaska & Pacific Steamship Company, sold supplies and delivered the same on board the steamship Robert Dollar for the use of crew and passengers. The appellee was informed of the fact that the

Alaska & Pacific Steamship Company was not the owner ' of the steamship, but was the charterer thereof. The charter party in this instance placed the vessel in the possession and control of the charterer for its use in transporting freight and passengers at its own expense. It is a demise of the vessel, and the instrument so declares. Under such a charter party the charterer is to all intents and purposes the owner of the vessel, and has the same power that the owner would have to render her subject to maritime liens. The charterer, being a corporation of the state of Washington, having its principal office at Seattle, was a resident of the latter place; and that place was the home port of the vessel as to all the transactions involved in this suit, the appellee having notice that the corporation was the charterer of the vessel. The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 396, and cases there cited. The supplies having been furnished the vessel in her home port, there was no lien therefor under the maritime law. If the appellee acquired a lien upon the vessel, therefore, it acquired it under the terms of the statute of Washington. The statute, it is true, makes no provision for a lien in favor of a charterer; but, as we have seen, the charterer in this instance, being the owner for the time being, with the rights and liabilities thereof so far as third persons are concerned, had the power to subject the vessel to the lien contemplated by the statute, provided, however, that the supplies were furnished upon the credit of the vessel. Here is the important inquiry in the case. The libel contains no allegation that the supplies were furnished on the credit of the ship, but it is contended that the evidence proves that such was the fact. The supplies having been furnished to the charterer, and at the place of its residence, the presumption is that credit was given to the charterer, and not to the vessel. The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710; The Westover (D. C.) 76 Fed. 384; Lighters Nos. 27 and 28, 6 C. C. A. 493, 57 Fed. 664; The Samuel Marshall, 4 C. C. A. 385, 54 Fed. 396; The Rosalie (D. C.) 76 Fed. 29. In The Valencia it was said: "In the absence of an agreement, express or implied, for a lien, a contract for supplies, made directly with the owner in person, is to be taken as made on his ordinary responsibility, without a view to the vessel as the fund from which compensation is to be derived." That presumption may be rebutted only by proof that credit was in fact given to the vessel. But in order to establish that fact it is necessary to show that such was the intention of both parties to the transaction. It is not sufficient that the vendor so understood, or that he charged the supplies to the vessel, and so entered them upon his books of account. The Kalorama, 10 Wall. 204, 19 L. Ed. 941; The James Guy, 1 Ben. 112, Fed. Cas. No. 7,195; The Union Express, 1 Brown, Adm. 537, Fed. Cas. No. 14,364; The Francis (D. C.) 21 Fed. 715; The St. John, 21 C. C. A. 141, 74 Fed. 842; The Columbus, 14 C. C. A. 522, 67 Fed. 553. It is not necessary, it is true, that the common intent so to bind the vessel be expressed in words or in the form of an agreement. It may be established by proof of circumstances from which the common intent may be deduced, but in all cases it is essential that the evidence shall show a purpose upon the

part of the seller to sell upon the credit of the vessel, and upon the part of the purchaser to pledge the vessel. In short, there can be no lien unless it was in the contemplation of both parties to the transaction, evidenced either by express words to that effect or by circumstances of such a nature as to justify the inference. See The Ella (D. C.) 84 Fed. 471, in which Bradford, J., has presented an exhaustive review of the decisions upon this subject. In that case it was held that credit was given to the vessel upon proof that there was an implied agreement for a lien, the goods having been charged to the vessel, and having been ordered by the master with instructions so to charge them. In the case before the court it is admitted that no agreement was made whereby the appellee, in dealing with the charterer, sold upon the credit of the vessel. The appellee did not bring his books into court, or show that the charges were originally entered against the vessel. The first bills which it made out and presented were made to "the Alaska Pacific Steamship Company, steamer Robert Dollar." Later the bills upon which the libel was brought were made out against the steamer Robert Dollar. The officers of the appellee testified that they sold the supplies upon the faith of the vessel, but they do not contend that they made known that fact to the purchaser, or that there was any mutual understanding to that effect. So far as the testimony goes, the intention to sell upon the credit of the vessel rested solely in the mind of the seller. No proof was offered to show that such was the understanding of the charterer, except the fact that the attorney of the charterer, having learned that the appellee was about to libel the ship on account of the unpaid debt for supplies, requested that the ship be not libeled until her return from her next voyage. This request, preferred after having received notice of a threatened libel, is no evidence to indicate that when the supplies were furnished the charterer understood that thereby the ship was rendered subject to a lien. The case is clearly distinguishable from the South Portland, 40 C. C. A. 514, 100 Fed. 494, decided by this court, which is cited by counsel for the appellee. In that case there was an express agreement to subject the vessel to a lien, the charterer in possession represented itself to be part owner, and it was not shown that the libelant knew that the vessel was chartered.

It is immaterial that the defense which is made to the libel is interposed by the charterer, and not by the owner. The charterer was bound by the charter party to protect the ship from liens. It had also the right, for the protection of its own interest, to intervene, and obtain the release of the ship. No principle of estoppel prevents it from so doing, it not having created or assented to a lien upon the ship. The decree of the district court is reversed, and the cause is remanded, with instruction to dismiss the libel.