THE F. A. KILBURN.†

(Circuit Court of Appeals, Ninth Circuit.   May 9, 1910.)

No. 1,792.

1. MARITIME LIENS (§ 24*)—STATUTORY LIEN FOR REPAIRS—REPAIRS MADE IN
   HOME PORT—NECESSITY OF CONTRACT.
      The presumption that attends the making of repairs or furnishing of
   supplies to a vessel in a foreign port will not arise to support a lien for
   repairs in her home port, given only by the local law; but proof of an
   understanding, express or implied, that they were furnished on the cred-
   it of the vessel, is essential.
      [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 30; Dec.
   Dig. § 24.*]

2. MARITIME LIENS (§ 29*)—STATUTORY LIEN FOR REPAIRS—AUTHORITY OF
   AGENT TO REPRESENT OWNER.
      During more than 3 years and on some 30 occasions libelant had made
   repairs on a steamer in her home port at the request of the chief en-
   gineer, in each case on the credit of the vessel and charging the vessel
   and owner, and in each case it received its pay. The owner chartered the
   vessel by a time charter, requiring the charterer to keep her in repair
   and return her free from liens. He reserved the right to retain the chief
   engineer, and directed him to see that the charterer kept the vessel in
   repair. Being in need of repairs, by authority of the charterer the en-
   gineer ordered the same from libelant, which furnished them, charging
   vessel and owner as usual, and having no knowledge of the charter.
   Held, that the engineer had ostensible authority from the owner to order
   such repairs, and that libelant was entitled to a lien on the vessel there-
   for, under a local statute giving a lien for repairs made under contract
   with the owner.
      [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 48; Dec.
   Dig. § 29.*]

Appeal from the District Court of the United States for the North-
ern District of California.

Suit in admiralty by the Moore & Scott Iron Works against the
steamer F. A. Kilburn. Decree for libelant, and claimant, the Maritime
Investment Company, appeals. Affirmed.

Samuel Rosenheim and Bernard Silverstein, for appellants.
Ira S. Lillick, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The libel in this case was brought to enforce
an alleged lien upon the steamer F. A. Kilburn for repairs to her
machinery and supplies furnished her while in her home port of San
Francisco, upon the order of the chief engineer of the steamer, to the
aggregate value of $1,429.44—such a lien being given by the local
law. Code Civ. Proc. Cal. § 813. The presumption that attends the
making and furnishing of such supplies to a ship in a foreign port
upon the order of her master is not sufficient to establish a valid lien
on a vessel in her home port given only by virtue of the local law. In
the latter case, proof that the supplies were furnished on the credit of
the ship is essential to the validity of the lien (Alaska & P. S. S. Co.
v. C. W. Chamberlin & Co., 116 Fed. 600, 54 C. C. A. 56), and proof,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied October 3, 1910.

either express or implied, that both parties to the transaction so understood. In the case just cited this court said:

"It is not necessary, it is true, that the common intent so to bind the vessel be expressed in words, or in the form of an agreement. It may be established by proof of circumstances from which the common intent may be deduced; but in all cases it is essential that the evidence shall show a purpose upon the part of the seller to sell upon the credit of the vessel and upon the part of the purchaser to pledge the vessel. In short, there can be no lien unless it was in the contemplation of both parties to the transaction, evidenced either by express words to that effect or by circumstances of such a nature as to justify the inference."

The libel in the present case alleged that the repairs were made and supplies furnished the steamer in question upon the credit of the vessel and at the request of her chief engineer and agent of the owner. The judgment appealed from rests upon that alleged authority and was given upon that theory. The question in the case is whether there is sufficient evidence to support it. The case shows that Marshall A. Frank was the owner of the steamer at the time the repairs were made and supplies furnished, and had been such owner for a considerable period, although the precise date when he became such does not appear. It appears that on the 22d of June, 1907, Frank chartered the vessel for eight months to the Crescent Wharf & Warehouse Company, a corporation having its principal place of business at Los Angeles, to be operated in the waters between San Francisco and San Diego, with the option on the part of the charterer to purchase the ship at any time during that period upon certain terms, among them that Frank should have the privilege of appointing the chief engineer of the steamer and that the master should be "mutually satisfactory" to both parties—the charterer, however, to pay the wages of both master and chief engineer. The charter party contained these further provisions: The steamer to be delivered to the charterer in good order and condition, with all its then furniture and equipment, and at the expiration of the charter should be delivered back to the owner, in the same good order and condition, ordinary wear and tear excepted, and—

"(7) The party of the second part shall pay all costs of operating and maintaining the said steamer (except as hereinafter provided, which exception is not applicable to the present case), and upon the expiration of this charter the said steamer shall be delivered back to the party of the first part (owner) free of all liens and incumbrances."

The evidence shows that the Independent Steamship Company operated the F. A. Kilburn, as well as other ships chartered as well as owned by the Crescent Wharf & Warehouse Company; that one Walton was the agent of the company at San Francisco, one Mott at San Pedro, and C. F. Lehman was the president and manager of the two companies. John T. Flynn was the chief engineer of the steamer at the time it was chartered, and had been such during all the time of Frank's ownership, and for a considerable period before. He continued such chief engineer until subsequent to the transactions here in question. The principal part of the repairs and supplies for which this libel was brought grew out of the breaking of the winches of the ship. Flynn testified, among other things, as follows:

"In this particular case the winches were broken down by being overloaded. The capacity of the winches was two tons apiece. They took a launch aboard

that weighed nine tons, and they broke the winch down. It was within an hour of sailing time. Mr. Walton, the agent of the Independent Steamship Company, asked me if I could do anything with those winches. I said it would take all night to get them ready. He said there would be a man come aboard at San Pedro to fix them, and on the arrival of the vessel in San Pedro Mr. Mills, the bookkeeper—on the arrival of the ship at San Pedro, Mr. Mills, the bookkeeper, and a machinist, came aboard, the man who does Mr. Lehman's work. He said it was impossible to do it at San Pedro. I told him that we could get the freight out with one winch. On the arrival in San Francisco, I immediately went to the office and told Mr. Walton what Mr. Mills and the machinist had said at San Pedro. He told us to have the work done as quick as we could, and, as we did not want to delay the vessel, I telephoned to Mr. Caroll (one of the libelant's employés) and he came down. He said he would have to take the winch to the shop. The order was to get it done as quickly as possible. They worked night and day, and they had it ready in three days. The next trip they took the other off. When we went on that run, the vessel was making a four or five days schedule, and they cut it down—"

The evidence contained in the record leaves no room for doubt that the appellee performed the work and furnished the supplies charged for, and we think it sustains also the findings of the trial court that the charges therefor were reasonable. The evidence is without conflict to the effect that the appellee did the work and furnished the supplies upon the credit of the vessel, as it had been doing upon the order of the same chief engineer during the then 3½ years which he had occupied that position, and during which the appellee had from time to time done about 30 jobs upon the vessel, some of which were performed during Frank's ownership and some previous to his acquiring the vessel —the charges therefor in the books of the appellee always being made against the vessel and owner. It is true that the evidence is also without conflict to the effect that Frank, whose home was in San Francisco, did not know of the repairs and supplies in question, and was never told of them by either the appellee or Flynn, and that the appellee never made any inquiry as to who the owner of the ship was. It is undisputed, however, that during all of the time Flynn was chief engineer upon the vessel, whenever repairs thereon were needed, he ordered them made by the appellee, which the appellee did upon the credit of the vessel, always charging the same to the vessel and owner, all of which charges previous to those here in question were paid, and that not only did the owner, Frank, in executing the charter above referred to, reserve the right to retain Flynn as the chief engineer, but Lehman's testimony is to the effect that Frank wanted Flynn so employed "to keep the vessel in good condition," and Frank himself testified:

"When I chartered the steamer to the Crescent Wharf & Warehouse Company, I went down to the steamer, and told Mr. Flynn I had chartered it to the Crescent Wharf & Warehouse Company, and that under the charter they were to make all repairs, and keep the steamer in the same condition she was in on the day I turned her over, and that he was to see that they did that. If he needed anything, he was to go to them, and see he got whatever she needed, and, if they did not do the work, to let me know. The same instructions were given to the captain."

In view of the facts and circumstances referred to, we think the court below was right in holding that Flynn, the chief engineer of the steamer, had ostensible authority from the owner to order the repairs and the supplies mentioned in the libel.

The judgment is affirmed.