## THE COLUMBIA.

### (Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

### No. 2,058.

SEAMEN (§ 27*)—LIEN FOR WAGES—PRIORITY OVER MORTGAGE.

The fact that officers employed to navigate a vessel were also stockholders and officers of the corporation owner, which purchased it subject to a mortgage, which it assumed and agreed to pay, does not deprive them of the right to enforce a maritime lien for their wages as against the mortgagee.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 157–169; Dec. Dig. § 27.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

Suit in admiralty by Alex Zueghoer and others against the steamship Columbia; James Barron, claimant. Decree for libelants, and claimant appeals. Affirmed.

Robert McMurchie, of Everett, Wash., for appellant

Million & Houser and George Friend, all of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The record shows that the Columbia was a steamship duly registered under the laws of the United States, plying in the waters of Puget Sound, and that her then owner, one Good, mortgaged the steamer to the appellant, Barron, to secure to him the payment of $10,500. With that mortgage existing, Good, in March, 1910, sold the boat to a corporation, called Sound Motor Company, which assumed and agreed to pay the mortgage. During the months of April, May, June, and until about the middle of July of the year mentioned, the Motor Company operated the vessel on the Sound through certain of the stockholders of the corporation—its president, one Munck, first having charge of the ship, at which time the libelant K. J. Johannson was mate of it, and the libelant Zueghoer the purser. Subsequently K. J. Johannson succeeded Munck in command of the boat, and the libelant Julius Johannson became mate. All of these parties, to wit, Munck, Zueghoer, and the two Johannsons, as has been said, were stockholders of the Motor Company. Their operation of the boat was not successful, and under it the ship became indebted in a considerable sum, which Barron was compelled to pay in order to protect his mortgage. The mortgage not having been paid, Barron,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

199 F.—49

pursuant to its provisions, took possession of the boat on the 15th day of July, 1910.

The record shows that there was then due Zueghoer, on his wages for the months of April, May, June, and July, the aggregate amount of $229, that there was likewise due K. J. Johannson, for the months of April and May, the aggregate sum of $155, and to Julius Johannson, for the month of June, the sum of $65, no part of either of which sums was paid, and for which respective sums the present libel was brought by them.

In addition to the denials contained in the answer of the claimant, Barron, who filed a bond for the release of the vessel, he set up three affirmative defenses, in the first of which he alleged the execution of the mortgage by Good, his subsequent sale of it to the Motor Company, subject to the mortgage, the agreement of the Motor Company to pay it, that the libelants were officers and trustees of that company, and the operation of the boat by the company, through those officers, during which time the indebtedness was incurred which he was compelled to pay.

After the claimant took possession of the boat, he, at the solicitation of the libelants, continued its operation in the hope and expectation that they would be able to buy or effect a sale of it to the benefit of the respective parties to that arrangement, Barron paying their wages during such time; but their effort was without success, and the arrangement soon came to an end. At the inception of it, Barron knew that the libelants claimed a lien on the ship for their back wages, and the evidence shows that there was some talk between the parties concerning a waiver thereof; but neither the findings of the court below, nor the evidence, show any such waiver.

It is urged, however, on behalf of the appellant, that, inasmuch as the libelants were stockholders in the Motor Company at the time the back wages claimed were earned, they should not be allowed a lien therefor; that to do so will in some way operate as a "gross fraud" on the claimant. We are unable to see in what way. Alaska & P. S. S. Co. v. C. W. Chamberlin & Co., 116 Fed. 600, 54 C. C. A. 56, and other like authorities cited by the appellant, are inapplicable to the present case.

The judgment is affirmed.