## THE MALOLA.

(District Court, W. D. Washington, N. D.   May 18, 1914.)

1. MARITIME LIENS (§ 29*)—REPAIRS—SUIT TO ENFORCE LIEN.
    The owner of a fishing schooner *held* bound by the approval of an account for repairs on a gas engine by her agent, who contracted for and superintended the work, where such approval was given after the engine had been tried and broken down subsequent to the repairs and without complaint as to the work done.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 48; Dec. Dig. § 29.*]

2. MARITIME LIENS (§ 65*)—REPAIRS—AGREEMENT FOR LIEN.
    Evidence considered, and *held* sufficient to establish the claim of a libelant that repairs on a vessel in her home port were made on the credit of the vessel, and that such was the understanding of both libelant and the owner.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 103; Dec. Dig. § 65.*]

3. MARITIME LIENS (§ 27*)—REPAIRS—RIGHT TO LIEN.
    That part of the work connected with the installation of an engine on a vessel was done upon the engine while it was still on shore does not deprive the one doing the work of his right to a maritime lien therefor.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 41–45; Dec. Dig. § 27.*]

4. MARITIME LIENS (§ 61*)—REPAIRS—SUIT TO ENFORCE LIEN.
    A general agreement by one making repairs on a vessel to wait a stated time for payment does not deprive him of the right to file a libel before that time to enforce his lien, where the vessel is about to be removed from the jurisdiction; and in any event the premature commencement of the suit, where the owner was not damaged thereby, would affect only the matter of costs.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 99; Dec. Dig. § 61.*]

5. MARITIME LIENS (§ 29*)—REPAIRS—RIGHT TO LIEN—AUTHORITY TO BIND VESSEL.
    Facts considered, and held not such as to put one making repairs on a vessel on inquiry as to the authority of the person contracting for the repairs, who was an agreed purchaser of a part interest and in possession, to bind the vessel therefor under the provisions of Act June 23, 1910, c. 373, § 3, 36 Stat. 605 (U. S. Comp. St. Supp. 1911, p. 1192).
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 48; Dec. Dig. § 29.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by the Elliott Bay Yacht & Engine Company against the schooner Malola; E. E. Van Hook, claimant. Decree for libelant.

William H. Gorham, of Seattle, Wash., for libelant.

Libelant cites the following authorities: The Ha Ha (D. C.) 195 Fed. 1013; The Thos. W. Rodgers (D. C.) 197 Fed. 772; The City of Milford (D. C.) 199 Fed. 956; Alaska & P. S. S. Co. v. Chamberlain, 116 Fed. 600, 54 C. C. A. 56; Chouteau v. Allen, 70 Mo. 290; Bierce v. Red Bluff Hotel, 31 Cal. 165; Hayward v. Inc. Co., 52 Mo. 192, 14 Am. Rep. 400; Conger v. R. Co., 24 Wis. 158, 1 Am. Rep. 164; Wortman v. Griffith, Fed. Cas. No. 18,057; Zane v. The President, Fed. Cas. No. 18,201; The L. B. X. (D. C.) 93 Fed. 233; The Lassell (D. C.) 193 Fed. 539; The Pioneer (D. C.) 53 Fed. 279; Clark v. Lumber, 70 Fed. 1020, 17 C. C. A. 555; The Ella (D. C.) 84 Fed. 494.

Wardall, Martin & Wardall, of Seattle, Wash., for claimant.

In addition to certain authorities cited by libelant, claimant relies on: The Edna (D. C.) 185 Fed. 206; section 4, Fed. Maritime Lien Act.

CUSHMAN, District Judge. In October, 1910, a libel for $1,223.15 herein was filed for materials and labor furnished at the Port of Seattle in repairing, altering, equipping, and furnishing the respondent, Malola. The Pacific Net & Twine Company, of the same place, filed a claim as owner. Mrs. E. E. Van Hook, also of Seattle, filed a claim as owner, likewise, alleging that, though she had, in October, 1910, given a bill of sale to the Pacific Net & Twine Company, such conveyance was in effect a mortgage.

The answers of both claimants admit that libelant, at the request of the claimant Van Hook, did a small part of what is claimed in the libel, but deny the amount and value thereof. They deny that the work and material were furnished on the credit of the Malola and allege that claimant Van Hook contracted, in 1910, for libelant to, within 30 days, repair and overhaul a gas engine in the Malola, together with machinery attached thereto, and place them in good, first-class, seaworthy condition, for $218.

They further allege: That libelant delivered the boat July 1st, instead of May 30th, as agreed; that, by this delay, said claimant lost the use of the boat for the month of June. That the repairs were not properly made, whereby the engine broke down July 4th on the way to the fishing banks, and, upon returning to Seattle, the engine was found to be in such condition that it could not be repaired. That Van Hook contracted with one Randles, July 15th, to replace the old engine with a new one. That libelant agreed with Randles to install the new engine, looking only to Randles for payment, which work it so did, except as to labor performed by it for the Troyer-Fox Company, who furnished the engine to Randles. That thereafter this agreement was modified, whereby libelant agreed to look to the Troyer-Fox Company, solely, for its pay for all work in connection with installing the new engine. That, while repairing the old engine, libelant had furnished

extras for Van Hook, in amount not exceeding $75, which have not been paid; but the answer of Van Hook offers to allow this amount in reduction of her cross-libel for damages. That $300 of the amount claimed by libelant was for labor performed upon the old engine after its removal, and upon the new engine before it entered the Malola and while such engines were upon land. That this part of the claim is not maritime and there can be no lien therefor. That libelant agreed with Randles to wait for its pay 30 days after the completion of the work, but that, in violation of such agreement, this suit was brought before the expiration of the time agreed.

Mrs. E. Van Hook has also filed a cross-libel to recover $1,330 from libelant on account of the loss of the use of the Malola in the halibut fisheries during the months of June, July, August, and September, 1910; and for the further sum of $248.18. These items are claimed as losses and damages caused by the delay and failure of libelant to perform its contract for the repair and overhauling of the old engine. The claim of $248.18 was reduced upon the trial, by cross-libelant, to $138.

Libelant, as cross-respondent, answering the cross-libel, admits that, at the time alleged, it contracted to repair the old gasoline engine and place the same in first-class condition, as far as its condition would permit; but, categorically, denies all of the other allegations of the cross-libel inconsistent with its asserted claim. It alleges that the engine broke down when the Malola had gotten 35 miles from Seattle, that it was defectively built, and that a new engine was necessary. It further alleges that the cross-libelant, for the repair of the old engine, agreed to pay the reasonable value of the work and material, which amounted to $443.15, of which $120 was paid; that the vessel was delivered to cross-libelant, who approved the bill for the work and material; that, owing to an incompetent engineer, the vessel became temporarily out of commission on the way to the fishing banks; but that she returned to Seattle under her own power, with an engineer furnished by cross-respondent; that all the further work of removing the old engine and installing the new was at the request of cross-libelant, through her agent, the reasonable value of which was $1,135.54, of which $200 has been paid and $35.54 waived; that the charges were satisfactory to, and the bill therefor approved by, cross-libelant.

[1] Sanders, the attorney and agent of claimant Van Hook, ordered the first work done, superintended it, and approved the account therefor. This admitted approval of libelant's account, after the breaking down of the old engine—rendered for $343.15 on account of repairs to the old engine and machinery, without other evidence, is sufficient to overcome claimants' contention that the contract was for a certain sum, to wit, $218.

Claimants seek to avoid the effect of this approval, and assert now that libelant was negligent in installing the engine; that libelant's accounts were irregularly kept; and that Sanders, the agent of claimant Van Hook, in getting the repairs done, did not know, at the time of approving the account, of libelant's negligence.

No items of libelant's account in this matter are shown to have been

wrongly included in the approved statement. Sanders for the owner superintended the work of installing the engine, and he accompanied the vessel upon the cruise on which the engine broke down. He paid the account in part and approved a statement thereof after the vessel's return to Seattle.

The old engine was taken out and a credit of only $200 allowed therefor. A new engine was purchased to replace it for $2,500. Libelant—who had repaired the old engine—was afterwards engaged to do the work of installing the new one. Complaint was not made of negligence until after suit was brought. No effort was made to have the old engine further repaired by libelant, or others; or the question of the advisability of such repairs taken up with it, or submitted to others engaged in such business. These facts, as well as the approval of the account and part payment, with the other testimony in the case, show that the trouble with the engine was rather on account of its age and inherent unfitness, and not because of any negligence upon libelant's part in repairing it, which caused its failure to work satisfactorily.

The evidence is conflicting concerning whether the agreement was to finish these repairs by May 30, 1910, as alleged by claimants, or not. The court finds that claimants have not sustained the burden of proving this allegation, or that, if there was delay, it was the fault of libelant. The question of damage on account of libelant's alleged delay will therefore not be considered.

[2] The Act of June 23, 1910, provides:

"That any person furnishing repairs, supplies, or other necessaries. including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"Sec. 2. That the following persons shall be presumed to have authority from the owner or owners to procure repairs, supplies, and other necessaries for the vessel; the managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel.

"Sec. 3. That the officers and agents of a vessel specified in section two shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel, but nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." Act June 23, 1910, c. 373, 36 Stat. 604, 605; Fed. Stat. Ann. Supp. 1912, vol. 1, p. 352 (U. S. Comp. St. Supp. 1911, p. 1192).

The work of installing and repairing the old engine was done in May, June, and July, 1910, $217.10 of the amount of which was for labor and material prior to June 23d, and $106.06 for that done and furnished subsequent to June 23d.

"The supplies having been furnished to the charterer, and at the place of its residence, the presumption is that credit was given to the charterer, and not to the vessel. * * * In the Valencia it was said: 'In the absence of an agreement, express or implied, for a lien, a contract for supplies, made di-

rectly with the owner in person, is to be taken as made on his ordinary responsibility, without a view to the vessel as the fund from which compensation is to be derived.' The Valencia, 165 U. S. 264 [17 Sup. Ct. 323, 41 L. Ed. 710]. That presumption may be rebutted only by proof that credit was in fact given to the vessel. But in order to establish that fact it is necessary to show that such was the intention of both parties to the transaction. It is not sufficient that the vendor so understood, or that he charged the supplies to the vessel, and so entered them upon his books of account." Alaska & P. S. S. Co. v. C. W. Chamberlain & Co., 116 Fed. 600, 602, 54 C. C. A. 56.

To sustain a lien, libelant relies upon the fact that Sanders, claiming to be the owner and actually in the control and management of the vessel at her home port, ordered the work to be done on her; that he had been the attorney for libelant as late as April, 1910, and, as such attorney, had advised libelant, in the conduct of its business in working upon boats, "never to look to anybody but the boat for pay"; that Sanders approved the bill for such services and material rendered by libelant, which bill was rendered to "E. L. Sanders" and "Launch Malola."

The fact that Sanders had so recently been the attorney of libelant and, as such, advised libelant "never to look to anybody but the boat for pay," warrants the court in concluding that, at the time he ordered the work done, he knew that it was probably libelant's purpose to assert a lien. Chouteau v. Allen, 70 Mo. 290; Bierce v. Red Bluff Hotel, 31 Cal. 165; Hayward v. Inc. Co., 52 Mo. 192, 14 Am. Rep. 400; Conger v. R. Co., 24 Wis. 158, 1 Am. Rep. 164. That Sanders knew of libelant's intent, alone, would not suffice, "but in order to establish that fact (an agreement for lien) it is necessary to show that such was the intention of both parties to the transaction." A. & P. S. S. Co. v. Chamberlain, supra.

It is clear that, if Sanders—acting as agent of claimant—did nothing to manifest an intent to allow a lien, or mislead libelant concerning its allowance, the fact of such prior advice should not bind claimant. If Sanders had, likewise, in the past, advised claimant Van Hook that at any time in having her boat repaired, she should have it done on her personal credit and not on the credit of the vessel (which fact libelant's agent knew), would this change the contract? Certainly not.

The effect of this past advice, if it in any way affects a present intent, would only be to estop claimant from denying that it was libelant's intent to claim that the work was done on the credit of the vessel; but it would not, alone, be sufficient to show a like intent upon claimant's part.

The approval of the account rendered by libelant to "E. L. Sanders" and the "Launch Malola" is worded:

"The foregoing account of labor and material used in repairing Schr. Malola is correct as stated.                                    E. L. Sanders."

As decided in Alaska & Pacific S. S. Co. v. C. W. Chamberlain & Co., 116 Fed. 600, 54 C. C. A. 56:

"It is not sufficient (to establish the fact of an agreement for lien) that the vendor so understood, or that he charged the supplies to the vessel, and so entered them upon his books of account."

Yet the approval of the account, as stated, to the "Launch Malola" by Sanders, who had authority to bind the owner, is sufficient to show the past intent and agreement for a lien upon the vessel. It follows from the foregoing that it is also sufficient to establish libelant's account for the portion accruing after June 22, 1910, since which time the presumption would be that the work was done on the credit of the vessel.

There is no contention that the work done by libelant in installing the new engine was, in any way, unsatisfactory.

The allegation by claimants of a modification of the agreement with libelant for installing the new engine, whereby it is alleged to have been understood that libelant was to look to the Troyer-Fox Company (Astoria Iron Works) for its pay, is wholly unsupported by evidence.

Randles, under an arrangement with claimant Van Hook, was to furnish the new engine. The Astoria Iron Works agreed with him to deliver such engine, in Seattle, with certain adjuncts, the exact nature of which is not clearly disclosed, but which were necessary in connecting the engine furnished with the machinery already in the boat. Later Randles represented to libelant that the Astoria Iron Works had failed to supply such adjuncts and requested libelant to do so and send the bill therefor to the Astoria Iron Works. The latter company did not pay libelant, but credited Randles, upon his account, with the portion thereof acknowledged by the Astoria Iron Works. Libelant, not being paid by the Astoria Iron Works, charged the same in its account in question in the present suit. Such course was proper.

[3] The claim that work done upon the new engine, while it was yet upon land and prior to its being put into the vessel was not of a maritime nature and that there can be no lien therefor, cannot be maintained. Wortman v. Griffith, Fed. Cas. No. 18,057; Zane v. The President, Fed. Cas. No. 18,201; 1 Cyc. 825 et seq. It is not clear that work, if any, done upon the old engine after its removal from the vessel, would be either of a maritime character or lienable; but, as the evidence fails to disclose what, if any, part of the account sued on is for such item, it is not necessary to determine such question.

[4] It is alleged by the claimant Pacific Net & Twine Company that libelant agreed to wait for its pay until 30 days after the completion of the installation of the new engine; that it failed to do so and libeled the vessel prematurely. There is a dispute in the testimony as to the terms of this agreement—whether libelant agreed, unconditionally, to wait 30 days, or agreed to wait upon an unperformed condition. It is not necessary to determine this issue, as there is no evidence that libelant agreed or understood that, in the meantime, the vessel would leave the jurisdiction. The vessel was about to proceed to Alaskan waters at the time the libel was filed. This would warrant the commencement of suit, notwithstanding an agreement for delay. The Lassell (D. C.) 193 Fed. 539.

The libeling of the boat did not substantially delay her intended voyage, as she sailed the day after she was libeled. Libeling prematurely, at least in a case such as the present one, would only affect the matter of costs. The Lassell (D. C.) 193 Fed. 539, 543; The Stroma, 53

Fed. 279, 281, 3 C. C. A. 530; Clark v. 505,000 ft. of Lbr., 70 Fed. 1020, 1021, 17 C. C. A. 555; The Ella (D. C.) 84 Fed. 471, 494; 1 Cyc. 877 (3).

Where, as in this case, the libelant's entire claim is disputed and the time alleged to have been allowed for payment has expired during the proceeding, no extra costs being incurred by reason of its being prematurely brought, the allowance of costs would in no way be affected.

Although there are attached to the libel statements of the account involved in this suit for labor and material, which statements were O. K.'d by Randles, the correctness of such statements is now denied by claimants. It is alleged by them that libelant's books of account were padded so as to largely increase the amount of these bills. A charge in the account of four hours work is shown to be incorrect. There is considerable testimony concerning the accounts as kept in libelant's books against others, not parties to this suit, which, if true, would tend to show that libelant had, in certain instances, where it had two classes of work on hand at the same time—one being work contracted to be done for a sum certain, and the other on the quantum meruit—charged the time of the men working on the first class to the second class.

If proof of libelant's cause depended upon its books of account, it would be necessary to determine to what extent their correctness was impeached by this evidence; but Randles was present during the time the work was being done, superintending it for the owners, kept his own books, and O. K.'d the statements of account rendered by libelant upon the completion of the work. Under these circumstances, in the absence of any showing as to how Randles was misled, if at all, by the alleged falsely kept books, it is not proper to determine the issue raised concerning the correctness of such books.

It is asserted by claimants that Randles did not "O. K." the bills for labor and materials as they now appear; that, after securing his "O. K." upon the final sheet of the statements for labor and material, they were tampered with so as to enlarge the amount shown. Upon this issue claimants offer the copy of the statements of account claimed to have been delivered to Randles, which differ in many particulars from those attached to the libel and offered by libelant in evidence. No satisfactory explanation of the difference in these statements is given by the witnesses, and their correctness must largely, if not entirely, be determined by their inspection and the circumstances of the case.

The statements offered by libelant are clean statements, without erasures and in one handwriting. The total amount of the material is footed on the last page, and the O. K. of Randles and his signature are placed below such footing in the ordinary manner. The same is true concerning the statement for labor performed.

The statements produced by claimants, while most of them appear to be in the same handwriting as those produced by libelant, contain numerous erasures. Where these erasures relate to particular items, the amounts are uniformly less, with one or two trifling exceptions,

than those in the other statements. Where figures showing amounts have been erased, pains have been taken to completely obliterate the original figures; but, in one or two instances, where they can be traced, they agree with the figures upon the statements of libelant. Where there have been interlineations upon the statements produced by Randles, they appear in another handwriting than that in the body of the statements. Libelant's witnesses deny any knowledge of whose handwriting this is, and it does not appear whose it is. Upon the last page, of the statement for material which is produced by Randles—that is, the one corresponding with that upon which his O. K. appears in libelant's copy—there are the following footings: The footing for the last page; the total footings of former pages; the total of these two footings; an allowed credit; and the remainder, after deducting this credit—five separate numbers, all of which have been completely erased and rewritten.

In the statements produced by Randles for labor performed, the last page—being the one corresponding with that page in the copy produced by libelant upon which Randles' signature and "O. K." appear—is in a handwriting entirely different from any other in either of the statements, unless it be that in which the interlineations in the Randles statements are made. Upon the last page of the Randles statement for material appears the deduction "credit by allowance, $35.54." Upon the last page of the Randles statements for labor appear two credits, one being "by allowance, material returned, $35.54." These, together, evidently constitute a double credit.

For the foregoing reasons, it appears that the statements produced by libelant are entitled to the greater credit. Though the statements produced by Randles originally emanated from libelant, there is nothing to connect it with the particulars wherein these statements differ from those produced by libelant. As claimants do not account for the alterations in the statements offered by them, as they had long been in the possession of them, and as the changes, in the main, are to their advantage, the conclusion follows that these changes were made after the statements were delivered to Randles, and that they were originally counterparts of the statements produced by libelant, with the "O. K." of Randles thereon, and which are now found to be correctly stated as agreed.

[5] About July 10th, after the abandonment of the voyage, Sanders, for the claimant Van Hook, entered into negotiations with Randles, resulting in an understanding by which it was originally agreed that Randles should put a new engine into the boat and make changes in her—the exact nature of which is not disclosed—for a half interest therein. Pursuant to this arrangement, the boat was turned over to Randles' management and control, who took it to libelant to install the new engine. As manager and agreed purchaser in possession, Randles' employment of libelant to install the engine entitled it to a lien upon the vessel under the provisions of the Act of June 23, 1910 (supra), unless, by the exercise of reasonable diligence, it would have ascertained that, because of the terms of the agreement for sale, Randles was without authority to bind the vessel.

Logically, the question first to be determined is the one of reasonable diligence upon libelant's part. If there was not enough to put libelant on inquiry, it matters not, under the circumstances shown, what the exact terms of the agreement between Randles and Van Hook were. Morrow, the president and manager of libelant, was informed that Randles was to furnish and install an engine in the boat for a half interest therein, as first agreed between Randles and Van Hook. If that fact stood alone, it might have been sufficient to put libelant upon inquiry.

What constitutes reasonable diligence is to be determined, not in the light of a single fact, but in the light of all of the circumstances. The only credit received by libelant for this part of its work was the old engine, at an agreed price of $200. The old engine was a part of the vessel and the property of Van Hook. Such part payment on account warranted the assumption that Randles had authority to bind Van Hook and the boat.

In an agreement entered into between Randles and claimants Van Hook and the Pacific Net & Twine Company it is recited that:

"First party (Van Hook) is the owner of the schooner Malola and has agreed. * * * The cost of installation of said engine and all other expenditures upon said schooner, subsequent to July 10, 1910, to be equally divided between the first and third parties (Randles)."

Though this agreement was executed about the time of the completion of libelant's work on the vessel, as an admission of the prior terms of agreement, it is more persuasive than the recollection of interested witnesses as to general conversations, months past.

The court finds libelant entitled to a lien for this work and material also. The conclusion reached renders the consideration of the other questions urged unnecessary.

Decree will be prepared in accordance herewith.