Application of AGUIRRE.

Application of CASCO.

Application of FLORES.

United States District Court
S. D. New York.
May 24, 1950.

Saul S. Berzin, New York City, for petitioner Valentin Puente Aguirre.

Edythe Widdi, New York City, for petitioner Pedro Jose Casco.

Ernesto Medina Flores, pro se.

Oswald I. Kramer, Naturalization Examiner, New York City, for United States Department of Justice, Immigration and Naturalization Service.

SAMUEL H. KAUFMAN, District Judge.

These are three petitions for naturalization brought under Section 325(a) of the Nationality Act of 1940, 8 U.S.C.A. § 725(a), which provides for the naturalization of persons who have served with good conduct for an aggregate period of at least five years "on board vessels of more than twenty tons burden, whether or not documented under the laws of the United States, and whether public or private, which are not foreign vessels, and whose home port is in the United States * * *".

Each petitioner has a substantial amount of conceded valid service.[1]  The validity of certain periods of service is contested on the ground that the vessels on which it was rendered did not have their "home ports" in the United States. The contested service was rendered on board vessels owned by the Balboa Shipping Company, a Panamanian corporation, and the Empresa Hondurena de Vapores, a Honduran corporation, both of which were wholly owned subsidiaries of the United Fruit Company, an American corporation. The ships of the Balboa Shipping Company and the Empresa Hondurena de Vapores were registered under the flags of Panama and Honduras, respectively, but were operated under demise charters to the United Fruit Company, as owner pro hac vice.

The facts show that the "home ports" of the ships on which the contested service was rendered, as indicated on their documents, manifests, certificates of service and custom records, were not in the United States. The "home port", as indicated in those documents and records of the vessels owned by the Balboa Shipping Company was Balboa, Panama; and that of those owned by the Empresa Hondurena de Vapores was Tela, Honduras. However, the record shows that these vessels used United States ports as the regular and usual ports to which they normally returned at the completion of a voyage, and the places where their crews were customarily hired, paid off and discharged.

The Immigration and Naturalization Service contends that since the "home port" of a vessel, documented under the laws of the United States, is the port fixed and determined by the owner, subject to the approval of the Commissioner of Customs, and shown in the official records relating to the vessel, 46 U.S.C.A. § 18, the term "home port" as used in Section 325(a) should be interpreted as meaning that port which is designated as the "home port" in the vessel's official records. This construction is urged notwithstanding the fact

---

1. The conceded valid service of petitioners is as follows:

| | | |
|---|---|---|
| Ernesto Medina Flores | 57 months | 29 days |
| Valentin Puente Aguirre | 46 months | 18 days |
| Pedro Jose Casco | 54 months | 2 days. |

that Section 325(a) covers service on vessels "whether or not documented under the laws of the United States", while Section 18 of Title 46, U.S.C.A., applies only to vessels of the United States.

Prior to the passage of the latter section in 1925, the authorities, in ascertaining the validity of certain maritime liens, were consistent in defining "home port" as that port in which the owner of the vessel resided[2]; and, if the vessel had been chartered to a corporation, as owner pro hac vice, the "home port" was defined as that in which the charteree corporation had its principal place of business[3]. If the latter definitions were applied to Section 325(a), the vessels on which the contested service was rendered would be considered as having had their "home ports" in the United States.

 But whether or not these definitions should be used as a criterion in determining the meaning of "home port" for the purposes of this case should depend on whether or not they have any relevance in realizing the purposes of Section 325(a). In United States v. Camean, 2 Cir., 174 F.2d 151, the Court of Appeals pointed out the dual purpose of that section: (1) to allow to become citizens a class of persons whose occupation prevents them from complying with the general requirements of continuous residence in the United States, and, (2) to secure citizen seamen to man our merchant marine. Neither the fact that a vessel's documents may designate a foreign port as its "home port", nor the fact that a corporation, to which the vessel has been chartered as owner pro hac vice, has its principal place of business in this country, has any conclusive relevance in realizing these purposes. "All that is important is that the alien's service shall expose him to a scrutiny which is the measurable equivalent of actual residence * * *". United-

ed States v. Camean, supra, 174 F.2d at page 153.

 Since the facts here show that the vessels on which the contested service was rendered plied between the United States and foreign ports, since their crews were customarily signed on, discharged and paid off in a port of the United States, and since they were not "foreign" vessels, United States v. Camean, supra, it would seem that the service of these petitioners did expose them to a "scrutiny which is the measurable equivalent of actual residence".

In view of these facts, it is concluded that the "home port" of these vessels was in the United States within the meaning of Section 325(a) of the Nationality Act of 1940.

These petitions are granted and petitioners may be admitted to citizenship upon taking the oath required by law.

2. Learned v. Brown, 5 Cir., 94 F. 876, 880; The Thomas Fletcher, C.C., 24 F. 375; The E. A. Barnard, C.C., 2 F. 712, 716; The Albany, 1 Fed.Cas. p. 288, No. 131; Hill v. The Golden Gate, 12 Fed.Cas. 168, No. 6,492, affirmed, 12 Fed.Cas. 155, No. 6,491; The Mary Bell, 16 Fed. Cas. 957, No. 9,199. This was so even though the vessel was of foreign registry and flew the foreign flag. The Alice Tainter, 1 Fed.Cas. 405, No. 195; The Chelmsford, D.C., 34 F. 399, 401.

3. Alaska & P. S. S. Co. v. C. W. Chamberlain & Co., 9 Cir., 116 F. 600, 602; The Samuel Marshall, 6 Cir., 54 F. 396, 399.