**Petition for Naturalization of Pedro Padesio NAPALAN.**

United States District Court
S. D. New York.
Oct. 16, 1956.

295

Ruth Leider, New York City, for petitioner.

Morris Rifkin, Brooklyn, N. Y., Naturalization Examiner.

DAWSON, District Judge.

This is a petition for naturalization brought under § 330(a) (2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1441(a) (2), which provides for the naturalization of persons who have served honorably or with good conduct for an aggregate period of five years on any vessel described in § 325(a) of the Nationality Act of 1940 [1] prior to its amendment by the Act of September 23, 1950. This Act defines such craft as "vessels of more than twenty tons burden, whether or not documented under the laws of the United States, and whether public or private, which are not foreign vessels, and whose home port is in the United States * * *".

Petitioner, a man over sixty years of age, is a native of Manila in the Philippines and has been continuously employed as a seaman for many decades.

The Immigration and Naturalization Service concedes that petitioner had served honorably and with good conduct on ships, as defined in the Act, for a period of forty-five of the required sixty months. The period of employment of the petitioner on the S. S. Hirondelle is urged by petitioner to be sufficient to

1. Now 8 U.S.C.A. § 1441(a) (1).

complete the sixty months of service. The Immigration and Naturalization Service contends that service on that ship does not meet either of the statutory requirements in that the S. S. Hirondelle was "foreign" and did not have a home port in the United States.

The facts, as established at the hearing, show that petitioner entered the service of this ship at Mobile, Alabama, on February 25, 1941. The evidence shows that this ship was originally a French yacht built in France in 1911; that on July 3, 1937, the vessel was acquired by the Rhode Island Navigation Company, and was registered as a freight vessel with Boston, Massachusetts, as its home port; that on March 21, 1941, the United States registry was surrendered and the vessel sold to Philippine interests and placed under the registry of the Commonwealth of the Philippines. A letter from the company owning the ship was received in evidence which set forth the home port of the ship as Manila, Philippine Islands.

However, after the sale of the ship to the Philippine interests, the ship made only one voyage, leaving Mobile, Alabama, in April, 1941 obtaining cargo in Panama, and going to Hong Kong, China, where it was placed in drydock for repairs. While the ship was in Hong Kong, the War had broken out, and the harbor was bombed by the Japanese. Petitioner was rounded up by the Japanese and put in a concentration camp. He was imprisoned in Hong Kong; thereafter he escaped from Hong Kong together with other crew members and sailed to Free China; he then reported to the United States Army in Free China and volunteered for service. He was flown by an Army plane to Calcutta, India, arriving on May 16, 1943; he was advised by the American Consul there that he was too old for service in the United States Army, but it was suggested that he could perform useful service in the United States Merchant Marine in the war days. He therefore volunteered for service in the Merchant Marine and served throughout the War and thereaft-

er on ships of the United States Merchant Marine. At one time the ship on which he was sailing was torpedoed.

The evidence indicates that petitioner is of good moral character.

Petitioner received from the United States Maritime Commission a Certificate of Substantially Continuous Service in the United States Merchant Marine from November 24, 1943 to April 3, 1947. He also received a citation from the President of the United States given to those who served in the Merchant Marine, certifying that he "undertook a most severe task—one which called for courage and fortitude."

There is no doubt that if the period of service on the S. S. Hirondelle is included in the service of petitioner, he has completed the five years' service required by the Act.

The first problem is whether that ship was a foreign ship. At the time that petitioner served on the ship, the Philippines were a territory belonging to the United States. The certificate of the owner of the ship, which was received in evidence, while stating that the ship flew the Philippine Flag, also stated with respect to other ships on which petitioner served prior to the War that they were "vessels of Philippine Registry flying under the American Flag." The Philippines became independent on July 4, 1946.

Classification of the S. S. Hirondelle as a Philippine craft does not render it a "foreign vessel". Contemporaneous with the termination of the Spanish American War the Philippines were held not to be a "foreign country" within the meaning of the tariff laws. Fourteen Diamond Rings v. United States, 1901, 183 U.S. 176, 22 S.Ct. 59, 46 L.Ed. 138. Subsequently the ultimate emancipation of the Islands was provided for by Congress. See Philippine Independence Act of March 24, 1934, 48 Stat. 456. Indeed, a constitution for the Commonwealth of the Philippine Islands was adopted and approved. Nevertheless, the Supreme Court was unanimous in re-

affirming that, "So far as the United States is concerned, the Philippine Islands are not yet foreign territory." Cincinnati Soap Co. v. United States, 1937, 301 U.S. 308, 319, 57 S.Ct. 764, 769, 81 L.Ed. 1122. Accordingly, the Court concludes that a vessel owned at the time of World War II by Philippine interests was not a "foreign" vessel.

■ The next question is whether the home port of the S. S. Hirondelle was in the United States. The term "United States" is defined in § 101(d) of the Nationality Act of 1940[2] as including "the continental United States, Alaska, Hawaii, Puerto Rico, and the Virgin Islands". Petitioner signed on this ship in a United States port. Prior to the time of this voyage, the home port of this ship had admittedly been Boston, Massachusetts. Although the new owners of the ship registered the ship as having a home port in Manila, the ship never got to the Philippines. The mere fact that the registration of the ship by the new owners indicated that a home port in the Philippines was intended is not, in and of itself, sufficient to establish, under these circumstances, that Boston was no longer a home port. Compare Application of Aguirre, D.C.S.D. N.Y.1950, 90 F.Supp. 668. The conclusion is reinforced by the statute itself which permits vessels not documented American to have a home port in the United States.

The record indicates that on its westward trip, the S. S. Hirondelle lacked the regular contact necessary to adopt a new home port. See Petition of Witt, D.C. E.D.N.Y.1954, 118 F.Supp. 855. Not to find Boston a home port would give rise to the anomalous conclusion that the S. S. Hirondelle had no home. Accordingly, the Court finds as a fact that the home port of the S. S. Hirondelle was in the United States.

■ Petitioner claims credit for sixteen and one-half months' service on the S. S. Hirondelle. Part of this time was spent in enemy confinement and escaping therefrom. The government has not objected that this constituted non-complying service. Indeed, the whole period meets the statutory requirements, as actual sea service is not mandatory. Petition of Karadzas, D.C.S.D.N.Y.1954, 124 F.Supp. 25; cf. 46 C.F.R. § 304.76 (internment by enemy satisfies the U. S. Maritime Commission standard of "substantially continuous service") (1949).

■ Reviewing the record in this proceeding indicates that the applicant, as an Allied seaman, was captured and imprisoned, that he escaped to volunteer for the American Army, and that he served honorably in the American Merchant Marine during the hazardous days of the War. Certainly, throughout this period, he was exposed to a scrutiny which is the "measurable equivalent of actual residence" within the meaning of that phrase as used in the opinion of Judge L. Hand in United States v. Camean, 2 Cir., 1949, 174 F.2d 151, 153.

The Court concludes that petitioner has met the qualifications provided in the Act, and that he is entitled to be naturalized, and that he should be permitted to take the oath of naturalization.

2. Now 8 U.S.C.A. § 1101(a) (38).