**Modesto Gutang DURON, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 355, Docket 23534.

United States Court of Appeals
Second Circuit.

Argued June 4, 1957.

Decided July 16, 1957.

Anita Streep, New York, N. Y. (Edward L. Dubroff, Brooklyn, N. Y., of counsel), for petitioner-appellant.

Leonard P. Moore, U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for respondent-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

The issue in this case is whether service from 1936 through 1941 on a vessel (1) owned by Philippine interests and (2) with a home port in Manila, Philippine Islands, falls within the requirements of the alien seaman naturalization law. We affirm the district court's decision that it does not.

Petitioner is a Philippine seaman who applied for naturalization under § 330 (a) (2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1441(a) (2), which provides that a seaman who serves for an aggregate period of five years on a vessel described in § 325(a) of the Nationality Act of 1940, shall be deemed to have resided in the United States for that period.[1] Section 325(a) describes the requisite type of vessel as follows: " * * * vessels of more than twenty tons burden, whether or not documented under the laws of the United States, and, whether public or private, *which are not foreign vessels,* and *whose home port is in the United States.*" 54 Stat. 1150. [Material provisions emphasized.]

It is undisputed that for a period of 56 months and 18 days petitioner served on vessels which met these requirements. To make up the remaining 3½ months he sought to include intermittent service from 1936 through 1941 on four ships which (1) were owned by Philippine interests; (2) were registered in Manila; and (3) had their home port in Manila. The Naturalization Ex-

---

1. "Sec. 330(a) * * * (2) For the purposes of this subsection, any periods of time prior to September 23, 1950, during all of which any person had served honorably or with good conduct for an aggregate period of five years on any vessel described in section 325(a) of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, shall be deemed residence and physical presence within the United States within the meaning of section 316(a) of this title, if such petition is filed within one year from the effective date of this Act. Notwithstanding the provisions of section 318, a person entitled to claim the exemptions contained in this paragraph shall not be required to establish a lawful admission for permanent residence. * * *"

aminer held that these were "foreign vessels" within the meaning of the Act and that Manila was not a "home port * * * in the United States." District Judge Galston, without opinion, also denied naturalization and petitioner appealed.

To succeed, petitioner must prove both requirements. Since we do not think that Manila can be considered a "home port" in the United States, we do not find it necessary to examine the problem of whether Philippine vessels "are not foreign vessels." [2]

There are no decisions directly in point, but inferences from relevant statutory provisions and judicial decisions make it rather clear that Manila cannot be considered a home port in the United States.

In the first place, § 101(d) of the Nationality Act of 1940, 54 Stat. 1137, re-enacted in 8 U.S.C.A. § 1101(a) (38), which defines the term "United States," does not include the Philippine Islands. Thus, it provides:

"For the purposes of this Act * * * (d) The term 'United States' when used in a geographical sense means the continental United States, Alaska, Hawaii, Puerto Rico, and the Virgin Islands of the United States."

Petitioner argues, however, that § 325 (a) uses "United States" not in the geographical sense, but in some "political" sense. He argues as follows:

"If such a vessel was being used to promote, benefit and facilitate the trade, commerce, economy, and welfare of the United States, and if an alien seaman was to be rewarded therefor by expeditious and facilitated and less exacting naturalization, it would matter little that the 'home port' were located in a territory or possession of this country, which was under the supervision, control, and sovereignty of this country, rather than in the places specified in Section 101(d) of the Act when it referred to the United States in a 'geographical' sense."

This might be an arguable position were it not for § 8(a) of the Philippine Independence Act of 1934, 48 Stat. 462, which specifically states:

"(1) For the purposes of the Immigration Act of 1917, the Immigration Act of 1924 (except section 13 (c)), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. *For such purposes the Philippine Islands shall be considered as a separate country* and shall have for each fiscal year a quota of fifty." [Emphasis added.]

In 1940 it was well recognized and expected that the Philippines would soon be independent and that their status was different from that of the territories mentioned in § 101(d) of the Nationality Act. See also Rabang v. Boyd, 77 S.Ct. 985; Barber v. Gonzalez, 1954, 347 U.S. 637, 642, 74 S.Ct. 822, 98 L.Ed. 1009; Hooven & Allison v. Evatt, 1945, 324 U.S. 652, 677–678, 65 S.Ct. 870, 89 L.Ed. 1252. We think that this provision of the Independence Act, taken together with § 101(d) of the Nationality Act of 1940, clearly shows that a home port in the Philippine Islands cannot be considered as a home port in the United States.

Affirmed.

2. See In re Napalan's Petition, D.C.S.D. N.Y.1956, 145 F.Supp. 295; but cf. Hooven & Allison Co. v. Evatt, 1954, 324

*U.S. 652, 677–678, 65 S.Ct. 870, 89 L. Ed. 1252.*